UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 8/15/2024_
```

EMILY PENZO,

                              Plaintiff,

              -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                              Defendant.

1:19-cv-07478-MKV

**OPINION AND ORDER DENYING
IN PART AND GRANTING IN
PART POST-TRIAL MOTIONS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Emily Penzo sued her former employer, Defendant Consolidated Edison Company of New York, Inc., alleging that Defendant discriminated and retaliated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and that Defendant retaliated against her and interfered with her benefits in violation of the Family and Medical Leave Act. Following a four-day trial at which nine witnesses testified and sixty-six exhibits were received in evidence, a jury returned a verdict for Plaintiff on a single claim of retaliation in violation of the NYCHRL, and awarded Plaintiff compensatory damages in the form of back pay in the amount of $203,951.35. [ECF No. 173 ("Special Verdict Form")]. The jury found for Defendant on Plaintiff's remaining seven claims. Special Verdict Form. Thereafter, the Court entered final judgment in favor of Plaintiff in the amount of the jury's award, plus pre-judgment interest in the amount of $31,078.83, pursuant to the New York Civil Practice Law and Rules ("CPLR"), and post-judgment interest accruing from the date of judgment to payment, pursuant to 28 U.S.C. § 1961. [ECF No. 178 ("Judgment")].

Before the Court are post-trial motions of both parties. Plaintiff moves for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, or, in the alternative, to alter or

amend the judgment pursuant to Rule 59(e).[1]  [ECF Nos. 188, 189, 195 ("Pl. Mem.")].  Defendant opposed, and Plaintiff filed a reply.  [ECF Nos. 207, 224 ("Pl. Reply")].  In further support of either her own motion or her opposition to Defendant's motion, and without leave of Court, Plaintiff filed a sur-reply.[2]  [ECF No. 225 ("Pl. Sur-reply")].  Defendant renews its motion for judgment as a matter of law pursuant to Rule 50(b) or, in the alternative, moves for a new trial pursuant to Rule 59(a).  [ECF Nos. 191, 192 ("Def. Mem.")].  Plaintiff opposed, and Defendant filed a reply.  [ECF Nos. 214, 215, 221 ("Def. Reply")].  The parties each request oral argument in connection with their motions and oppositions.  [ECF Nos. 195, 213, 215, 222].  Defendant also moves, unopposed, for leave to strike Plaintiff's sur-reply and the excess pages of Plaintiff's reply brief.  [ECF No. 226 ("Def. Mot. Strike")].

Defendant also requests a pre-motion conference for leave to file a Rule 11 motion for sanctions against Plaintiff in connection with Plaintiff's motion for a new trial, which Plaintiff opposed.  [ECF Nos. 223 ("Def. R. 11 Ltr."), 227].

The Court assumes familiarity with the factual background, procedural history, and trial transcript [ECF Nos. 179, 181, 183, 185 (together, "Tr.")] in this case.  This Order sets forth only those facts necessary to contextualize the Court's rulings on the present motions.  For the reasons explained below, the parties' motions are DENIED with the exception of Defendant's request for leave to file a Rule 11 motion, which is GRANTED.

---

[1] Plaintiff also moves for attorneys' fees [ECF Nos. 187, 197], which the Court resolves by separate Order.

[2] In addition to her unauthorized sur-reply, and further burdening the docket in this case, Plaintiff repeatedly filed, without explanation, "amended" documents in support of her motion and her opposition to Defendant's motion.  [*See* ECF Nos. 195, 215].  Despite the untimeliness of Plaintiff's corrected filings, the Court considered these superseding documents in resolving the motions.

## LEGAL STANDARDS

### I.    Post-Verdict Motion for Judgment as a Matter of Law

Pursuant to Rule 50(a), "a party may move for judgment as a matter of law ('JMOL') during trial at any time prior to the submission of the case to the jury." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (citing Fed. R. Civ. P. 50(a)(2)).  A motion for JMOL "alert[s] the opposing party to the supposed deficiencies in his proof, thereby affording the nonmoving party 'an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment.'" *Kerman v. City of New York*, 374 F.3d 93, 118 (2d Cir. 2004) (citations omitted) (quoting Fed. R. Civ. P. 50 Advisory Committee Note (1991)).  If the court denies a Rule 50(a) motion made at trial, the movant may renew its motion for JMOL under Rule 50(b) following an unfavorable verdict.  *See Galdieri-Ambrosini*, 136 F.3d at 286 (citing Fed. R. Civ. P. 50(b)).  "The posttrial motion is limited to those grounds that were specifically raised in the prior motion for JMOL; the movant is not permitted to add new grounds after trial."  *Id.* (cleaned up); *accord Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012).  "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."[3]  Fed. R. Civ. P. 50(b).

"To warrant post-verdict judgment as a matter of law, the movant must show that the evidence, when viewed most favorably to the non-movant, was insufficient to permit a reasonable juror to have found in the non-movant's favor."  *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018).  This standard imposes a high burden that is "met only in rare occasions."  *Id.* (internal

---

[3] A party filing a renewed motion for JMOL, as Defendant here, "may include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).

quotation marks omitted); *see Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005) ("A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict."). "The movant, generally, must be able to show a complete absence of evidence supporting the verdict such that the jury's findings could only have been the result of sheer surmise and conjecture." *Conte*, 895 F.3d at 171 (cleaned up). In resolving such a motion, "[t]he court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir.1988)).

## II.  Motion for a New Trial

A district court may, on a party's motion, "grant a new trial on all or some of the issues— and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59(a) . . . [imposes] a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003) (internal quotation marks omitted). However, "[a]lthough the standard for granting a new trial pursuant to Rule 59 is less onerous than that for granting judgment as a matter of law pursuant to Rule 50, it is still high." *Tardif v. City of New York*, No. 13-CV-4056 (KMW), 2023 WL 2495897, at *6 (S.D.N.Y. Mar. 14, 2023). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 314 (2d Cir. 1999) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)).

### III.    Motion to Alter or Amend Judgment

"A party who moves to alter or amend a judgment under Fed. R. Civ. P. 59(e) must demonstrate that the Court overlooked 'controlling law or factual matters' that had been previously put before it." *Komatsu v. City of New York*, No. 23-CV-5406 (LTS), 2024 WL 1905786, at *1 (S.D.N.Y. Apr. 30, 2024) (quoting *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009)); *see Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020). "A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler*, 970 F.3d at 142 (cleaned up).

## ANALYSIS

### I.    Defendant's Motion for Post-Verdict JMOL

At the close of Plaintiff's case-in-chief, Defendant moved for JMOL pursuant to Rule 50(a), arguing, as relevant here, that Plaintiff "failed to tie" her filing of an EEOC complaint to any subsequent action taken by Defendant, including Plaintiff's ultimate discharge, thereby failing to meet her burden of proof as to her claim for retaliation under the NYCHRL. Tr. 378:11–19, 379:18–380:4. The Court denied JMOL on Plaintiff's claims under the NYCHRL[4], including her claim for retaliation, concluding that it could not find that a reasonable jury, crediting all inferences in the light most favorable to Plaintiff, could not return a verdict for Plaintiff on her NYCHRL claims. Tr. 387:3–10. Defendant has renewed its motion for JMOL pursuant to Rule 50(b) and

---

[4] The Court reserved decision on JMOL as to Plaintiff's remaining claims. Tr. 387:11–12. The jury did not find for Plaintiff on any of her remaining claims. *See* Special Verdict Form.

requests that the Court grant post-verdict JMOL in its favor as to the single claim on which Plaintiff prevailed at trial, retaliation under the NYCHRL.[5]  Def. Mem. 1.

To prove a *prima facie* case of retaliation under the NYCHRL, a plaintiff must establish, by a preponderance of the evidence, that (1) she engaged in a protected activity; (2) the defendant knew about the plaintiff's participation in the protected activity; (3) "the defendant took an employment action that disadvantaged the plaintiff *in any manner*"; and (4) "a causal connection existed between the [plaintiff's] protected activity and the [defendant's] negative employment action." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 27 (2d Cir. 2013); *see Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 69–71, 872 N.Y.S.2d 27 (1st Dep't 2009). Once the plaintiff establishes a *prima facie* case of retaliation, "the defendant must articulate legitimate non-[retaliatory] reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true [retaliatory] motive."[6]  *Ibok v. Sec. Indus. Automation Corp.*, 369 F. App'x 210, 213 (2d Cir. 2010) (quoting *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)).

Although these elements are similar to those required to prove a retaliation claim under the ADA and the NYSHRL, the Second Circuit has instructed that "the standard for claims under the NYCHRL is intended to be more liberal than the standard for [federal] and NYSHRL claims, and that 'courts must analyze NYCHRL claims separately and independently from any federal and state law claims.'" *Baldwin v. Goddard Riverside Cmty. Ctr.*, 615 F. App'x 704, 705–06 (2d Cir.

---

[5] Defendant's post-verdict motion renews arguments "specifically raised" in its JMOL motion at trial, and thus is properly before the Court.  *See Galdieri-Ambrosini*, 136 F.3d at 286.

[6] Although the Second Circuit has not articulated "to what extent[] the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims," *Mihalik v. Credit Agricole Cheuvreux N. America, Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013), "courts in this Circuit typically apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework."  *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 284 n.1 (S.D.N.Y. 2020) (cleaned up).

2015) (quoting *Mihalik v. Credit Agricole Cheuvreux N. America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).  "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Mihalik*, 715 F.3d at 109.  Specifically, as to the third element of a retaliation claim under the NYCHRL, the defendant's conduct need not result in a materially adverse change in the terms and conditions of the plaintiff's employment, but rather need only be "reasonably likely to deter a person from engaging in" protected activity.  *Id.* at 112.  As to the fourth, causal element of a retaliation claim under the NYCHRL, retaliation need only have been a "motivating factor" in the defendant's decision to engage in the negative employment action, even if it was not the sole or "but-for" cause of the defendant's action.  *Id.* at 110 n.8, 116; *accord Gordon-Mallett v. Mount Sinai Hosps. Grp., Inc.*, No. 22-CV-1159 (LJL), 2024 WL 1513910, at *24 (S.D.N.Y. Apr. 8, 2024).

The Court's instructions to the jury on Plaintiff's NYCHRL retaliation claim—to which neither party objected—reflected these standards.  *See* Tr. 775:9–778:1.

Defendant has not met the "particularly heavy" burden of establishing that the evidence presented at trial was insufficient for a reasonable juror to have found in Plaintiff's favor on her NYCHRL retaliation claim.  *Cross*, 417 F.3d at 248.  First, the evidence at trial established that on June 8, 2018, Plaintiff filed an EEOC complaint against Defendant alleging disability discrimination and retaliation. Tr. 138:11–139:18.  The filing of an EEOC complaint is a protected activity.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 719–20 (2d Cir. 2002); *Conway v. Healthfirst Inc.*, No. 21-CV-6512 (RA), 2022 WL 4813498, at *5 (S.D.N.Y. Sept. 30, 2022).  Second, Defendant was aware of Plaintiff's filing of the EEOC complaint:  The parties stipulated that Defendant's "law department received notice of the [EEOC] charge on June 19, 2018."  Tr. 139:17–18.  "[A] plaintiff may rely on 'general corporate knowledge' of her protected activity to

establish the knowledge prong" of a retaliation claim. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). Further, Plaintiff testified that she attended a meeting with the EEOC and Defendant to discuss her claims. Tr. 189:12–24, 190:9–12. Third, the evidence established that, thereafter, Defendant took several actions that disadvantaged Plaintiff in the workplace and that were reasonably likely to deter Plaintiff from engaging in future protected activity. For example, Plaintiff testified that following her EEOC complaint, she faced heightened scrutiny and negative treatment from her manager, Elissa Seidman, including timing of Plaintiff's bathroom breaks and withholding of resources and privileges from Plaintiff's team. Tr. 130:5–131:9, 148:14–149:3, 180:18–181:15, 182:22–183:1. Plaintiff also testified that her desk was moved to "what was at the office considered a junk desk" without a proper computer hookup, and that she was disciplined for timeliness issues that had previously gone undisciplined. Tr. 146:9–21, 155:15–22. Finally, Plaintiff and others testified that Defendant investigated Plaintiff's use of a colleague's parking pass, conduct for which other employees were not disciplined. Tr. 190:3–192:5, 225:13–226:9, 465:23–467:25. That investigation led to Plaintiff's termination. Tr. 224:4–225:12, 468:1–12.

The thrust of Defendant's motion for post-verdict JMOL concerns the fourth element of a *prima facie* NYCHRL retaliation case. Defendant argues that "Plaintiff fails to connect any alleged adverse action she experienced, including her termination, with her June 8, 2018 EEOC charge." Def. Mem. 7. In essence, Defendant challenges the jury's finding of causality—that a motivating factor in Defendant's decision to take actions against Plaintiff was retaliation for Plaintiff's filing an EEOC complaint. Defendant argues that no evidence supports the jury's finding of causality because: (1) Plaintiff's managers were not aware that she had filed an EEOC complaint; (2) there is no causal connection between Plaintiff's discipline for lateness and her EEOC complaint, as Plaintiff had previously been counseled for ongoing issues with timeliness; (3) Plaintiff's desk was moved for reasons related to Plaintiff's lateness, not her filing of an EEOC

complaint; (4) Defendant's rejection of Plaintiff's request to attend an external training had no connection to her EEOC complaint; (5) Plaintiff's testimony that she received heightened scrutiny following her EEOC complaint is undermined by the testimony of rebuttal witness Betty Griffin, who testified that she faced similar scrutiny; and (6) no evidence supports that Defendant's investigation regarding Plaintiff's use of a parking pass was motivated by retaliation for her EEOC complaint. *See* Def. Mem. 7–13. Finally, Defendant argues that it had a legitimate, non-retaliatory and non-pretextual reason for terminating Plaintiff's employment. *See* Def. Mem. 13–14.

None of these arguments persuades the Court to disturb the jury's verdict. Plaintiff testified that she informed her manager, Ms. Seidman, of her meeting with Defendant and the EEOC. Tr. 372:23–373:4. Although Defendant is correct that Ms. Seidman and others testified that they were not aware of Plaintiff's filing an EEOC complaint, *see* Tr. 415:13–19, 592:17–20, 599:6–15, 638:12–15, it is for the jury—not the Court on a motion for post-verdict JMOL—to resolve conflicting evidence and to assess the credibility of the witnesses. *See Tolbert*, 242 F.3d at 70.[7]

Defendant's remaining arguments challenging the jury's finding of causation fail for the simple reason that "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the

---

[7] Defendant's citation to *Edelman v. NYU Langone Health System*, No. 21-CV-502 (LJL), 2023 WL 8892482 (S.D.N.Y. Dec. 26, 2023), for the proposition that Plaintiff *must* establish her managers' awareness of her EEOC complaint to prove causation is misplaced. *See* Def. Mem. 7. *Edelman* concerned a "cat's paw" theory of liability: "When an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no retaliatory motive, the employer can nevertheless be held liable for retaliation under a 'cat's paw' theory if the supervisor was manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Edelman*, 2023 WL 8892482, at *13 (cleaned up) (quoting *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016)). "[A] plaintiff pursuing cat's paw liability must . . . show that the manipulating employee knew that the plaintiff engaged in protected activity in order to form a 'retaliatory intent.'" *Id.* at *19 n.14 (quoting *Vasquez*, 835 F.3d at 273 n.4). Plaintiff did not pursue such a theory in this case. Indeed, to *require* proof of individual decisionmakers' knowledge to establish causation in this case would be inconsistent with Second Circuit precedent, because although a plaintiff "cannot satisfy the causation prong through mere corporate knowledge," a plaintiff *can* "demonstrate[] causation indirectly by the temporal proximity between her complaint and her termination" or other adverse employment action. *Zann Kwan*, 737 F.3d at 844 n.4. In such a case, no showing of individual knowledge is required. *See id.* (noting, nonetheless, as here, testimony that went to decisionmaker's knowledge).

adverse action." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)); *see Feingold v. New York*, 366 F.3d 138, 156–57 (2d Cir. 2004) (applying principle to NYCHRL retaliation claims). Here, Plaintiff testified that certain of Defendant's actions against her, such as Plaintiff's transfer to an undesirable desk, Ms. Seidman's enhanced scrutiny of Plaintiff's performance and timeliness, and the diminishment of Plaintiff's support and resources, occurred close in time to Plaintiff's EEOC complaint. *See* Tr. 148:8–149:11. And critically, although Defendant did not determine that it would fire Plaintiff until April 2019 and finally terminated Plaintiff in July 2020, the security investigation that precipitated Plaintiff's termination began in the fall of 2018, only several months after Plaintiff filed her EEOC complaint and around the time of her meeting with the EEOC and Defendant.[8] Tr. 190:6–192:5, 465:23–468:12. The jury could find that this investigation was part of the heightened scrutiny alleged by Plaintiff. *See, e.g.*, *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 70 (E.D.N.Y. 2002) (sustaining plaintiff's verdict on NYCHRL retaliation claim where plaintiff "received a number of minor disciplinary actions for conduct which did not result in discipline for other [employees] and which [plaintiff] had engaged in without incident prior to the EEOC complaint"), *aff'd*, 93 F. App'x 260 (2d Cir. 2004).

Defendant argues that Plaintiff faced reprimand for tardiness and discipline or counseling for poor performance prior to her EEOC complaint, severing any causal inference based on

---

[8] Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of [protected activity] and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), "courts in this circuit have typically measured that gap as a matter of months, not years." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012).

temporal proximity.[9]  *See* Def. Mem. 8–9; Def. Reply 1, 6–7.  "While it is true that where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise," such an inference *is* permissible if "other instances of mistreatment" occur after the plaintiff's protected activity.  *Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983 F. Supp. 2d 277, 287 (S.D.N.Y. 2013) (cleaned up); *see Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 184 (E.D.N.Y. 2012) (noting that "this broad principle is inapplicable" where "certain significant events took place in the interim").  Here, evidence at trial established that some of Defendant's actions, including the security investigation that led to Plaintiff's termination, exclusively occurred *after* Plaintiff filed her EEOC complaint.  Plaintiff also testified, for example, that it was only after she filed the EEOC complaint that she began to receive enhanced scrutiny[10] and formal censure for untimeliness, which had previously gone undisciplined.  *See Hill*, 212 F. Supp. 2d at 70.  In fact, Defendant's argument supports this finding by pointing to evidence that Plaintiff's desk was moved because of her habitual lateness *after* her EEOC complaint.  *See* Def. Mem. 9–10.  A reasonable jury, crediting all inferences in Plaintiff's favor, could find that retaliation for Plaintiff's EEOC complaint was a motivating factor, even if not the but-for factor, in Defendant's decision to take actions that were reasonably likely to deter Plaintiff from engaging in protected activity.

Defendant finally argues that even if Plaintiff did prove a *prima facie* case of retaliation under the NYCHRL, Defendant had a legitimate, non-retaliatory and non-pretextual reason for

---

[9] Defendant also argues that Plaintiff's testimony about mistreatment that was not ongoing, but that occurred solely prior to her EEOC complaint, cannot be credited to her NYCHRL retaliation claim.  *See* Def. Mem. 4–6; Def. Reply 1–2.  The Court agrees and thus disregarded this testimony in its analysis.

[10] Although Defendant is correct that Ms. Griffin testified that she received similar scrutiny from Ms. Seidman as Plaintiff, *see* Def. Mem. 11–12, it was for the jury to weigh the credibility of Ms. Griffin's testimony.  *See Tolbert*, 242 F.3d at 70.  In addition, Ms. Griffin testified as to adverse actions that Plaintiff experienced that others did not, such as Defendant's security investigation into Plaintiff's use of a company parking pass.  *See* Tr. 650:8–651:6.

terminating Plaintiff's employment, citing to the conclusions of Defendant's security investigation regarding Plaintiff's use of a co-worker's parking pass.  *See* Def. Mem. 13–15.  Although "temporal proximity alone is not enough to establish pretext in [the Second] Circuit," *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014), and "the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance . . . does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination," *Renaud v. Fed. Exp. Corp.*, No. 10 CV 4261 LB, 2012 WL 34089, at *8 (E.D.N.Y. Jan. 6, 2012) (internal quotation marks omitted), a finding of pretext in this case is supported by other evidence presented at trial.  For example, a manager specifically documented Plaintiff's inquiry as to how to obtain permission to use a colleague's parking pass prior to any alleged wrongdoing by Plaintiff, *see* Tr. 550:13–551:16, testimony established that Defendant's system for the assignment and sharing of parking passes was informal and inconsistently maintained, *see, e.g.*, Tr. 556:23–557:5, 560:10–561:10, 569:2–572:2, 587:4–588:18, and other employees were not subject to investigation or discipline for using parking passes without permission, Tr. 568:2–13.  *See Bogdan v. New York City Transit Auth.*, No. 02 CIV. 09587 (GEL), 2005 WL 1161812, at *9 (S.D.N.Y. May 17, 2005) ("a jury [may] find that the inconsistent application of disciplinary policy [is] sufficient for a finding of pretext (citing *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998)).  "[A]pplying the liberal standards of the NYCHRL to the basic *McDonnell Douglas* [burden shifting] framework" in this case, *Torre*, 493 F. Supp. 3d at 284 n.1, a reasonable jury could find that Defendant's proffered reason for Plaintiff's termination was pretextual.

In consideration of the trial record, the Court cannot say that there is "a complete absence of evidence supporting the verdict such that the jury's findings" for Plaintiff on her NYCHRL retaliation claim "could only have been the result of sheer surmise and conjecture." *Conte*, 895

F.3d at 171 (cleaned up).  Accordingly, Defendant's renewed motion for JMOL or, in the alternative, a new trial, is DENIED.

## II.    Plaintiff's Motion for a New Trial

Plaintiff makes three arguments in support of her motion for a new trial pursuant to Rule 59(a): (1) that Defendant's counsel tampered with and intimidated Plaintiff's rebuttal witness, Ms. Griffin; (2) that the jury's verdict is inconsistent; and (3) that the Court erred in excluding Plaintiff's medical-record evidence.  Pl. Mem. 1–3, 12–14.  For the reasons explained below, none of these arguments convinces the Court that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *Amato*, 170 F.3d at 314 (quoting *Atkins*, 143 F.3d at 102).

### A.  Plaintiff Is Not Entitled to a New Trial for Alleged Witness Tampering

Plaintiff's first argument concerns an incident of alleged intimidation by one of Defendant's counsel[11] of Plaintiff's rebuttal witness, Ms. Griffin, an employee of Defendant and former co-worker of Plaintiff.  Although presented within the context of Plaintiff's motion for a new trial pursuant to Rule 59(a), this argument is more appropriately raised under Rule 60(b)(3), which provides that a party may seek relief from a final judgment for "fraud . . . , misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3); *see, e.g.*, *Schiel v. Stop & Shop Co.*, No. CIV. 3:96CV1742 WWE, 2006 WL 2792885, at *4 (D. Conn. Sept. 6, 2006) ("Fraud by an adverse party, including opposing counsel, properly falls under Rule 60(b)(3) . . . .  Motions for relief from judgment filed under Rule 60(b)(3) may include allegations of witness tampering . . . ." (citing *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 536 (7th Cir. 2003))); *see also Schlafman v. State*

---

[11] Because the Court finds Plaintiff's allegations of witness tampering to be unsubstantiated, the Court refers to the accused member of Defendant's counsel as "Defendant's Associate" to mitigate the reputational harm that could attend Plaintiff's allegations.

*Univ. of New York, Farmingdale*, 541 F. App'x 91, 93 (2d Cir. 2013) (affirming district court's denial of Rule 60(b)(3) motion based in part on alleged witness intimidation by defense counsel). "To prevail on a motion for a new trial pursuant to [Rule] 60(b)(3), the movant must show that (1) the adverse party engaged in fraud, misrepresentation or misconduct by clear and convincing evidence and that (2) such misconduct substantially interfered with the movant's ability to fully and fairly present its case." *Thomas v. City of New York*, 293 F.R.D. 498, 503 (S.D.N.Y. 2013) (citing *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003)), *aff'd sub nom. Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017); *accord Deng v. New York State Off. of Mental Health*, No. 1:13-cv-6801 (ALC) (SDA), 2018 WL 11176016, at *2 (S.D.N.Y. July 18, 2018) (citing *Catskill*, 286 F. Supp. 2d at 312), *aff'd sub nom. Ren Yuan Deng v. New York State Off. of Mental Health*, 783 F. App'x 72 (2d Cir. 2019); *see also Smart v. City of Miami Beach*, 933 F. Supp. 2d 1366, 1380 (S.D. Fla. 2013) (Plaintiff's cited authority, *see* Pl. Mem. 4, applying the clear and convincing evidence standard), *aff'd*, 567 F. App'x 820 (11th Cir. 2014).

Plaintiff's allegations of Defendant's misconduct are not supported by clear and convincing evidence. A party meets the clear and convincing evidence standard "only if the material it offer[s] instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence [its adversary] offer[s] in opposition." *Geo-Grp. Commc'ns, Inc. v. Chopra*, No. 15 CIV. 1756 (KPF), 2023 WL 6235160, at *11 (S.D.N.Y. Sept. 26, 2023) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Plaintiff's sole evidence of purported witness tampering is the affidavit of Ms. Griffin. [ECF No. 189-1 ("Griffin Aff.")]. Ms. Griffin states that upon arriving at the courthouse pursuant to her trial subpoena, she was confronted by Defendant's Associate, who asked "in a hostile manner" who Ms. Griffin was and why she was present. Griffin Aff. ¶¶ 3, 5–6. Ms. Griffin further states that Defendant's Associate "forcibly grabbed the [trial] subpoena" from her, "told [her] the subpoena [wa]s no good" and that she "would not be seeing the judge," asked questions

about who Ms. Griffin's manager was and when she was subpoenaed, and told Ms. Griffin to leave the building. Griffin Aff. ¶¶ 8, 10. Ms. Griffin states that Defendant's Associate's conduct "made [her] feel very scared, rattled, and nervous" and that when she was called to testify, she "felt intimidated and scared and was trembling the entire time." Griffin Aff. ¶¶ 15–16. Ms. Griffin asserts that she did not testify comprehensively "because [she] was fearful of being targeted" and that she could not "think clearly because [she] was shaken by the incident." Griffin Aff. ¶ 17. Ms. Griffin states that if the confrontation had not occurred, she "would have testified in detail as to the disparate treatment [Plaintiff] suffered, the vast discrepancies in discipline and the hostile work environment [Plaintiff] endured." Griffin Aff. ¶ 18.

Ms. Griffin's account of her interaction with Defendant's Associate is squarely rebutted by two competing affidavits: those of (1) Defendant's Associate and (2) a witness to the exchange, Defendant's employee (and Ms. Griffin's co-worker) Keri Childs. [ECF Nos. 208 ("Associate Aff."), 210 ("Childs Aff.")]. Defendant's Associate confirms that she had a conversation with Ms. Griffin during which she questioned Ms. Griffin as to why Ms. Griffin was at the courthouse and requested to see Ms. Griffin's subpoena.[12] Associate Aff. ¶¶ 6–7. However, Defendant's Associate denies raising her voice at Ms. Griffin, speaking to Ms. Griffin in an unprofessional tone, or stating that Ms. Griffin should not be at the courthouse and would not see the undersigned. Associate Aff. ¶ 9.

Ms. Childs, who testified during Defendant's case, avers in her affidavit that she was present for the entirety of the exchange between Ms. Griffin and Defendant's Associate. Childs Aff. ¶¶ 5–6. Ms. Childs's account of the interaction is consistent with that of Defendant's

---

[12] Defendant's Associate was unfamiliar with Ms. Griffin as a trial witness because, as a rebuttal witness, Ms. Griffin was not noticed by Plaintiff. *See* Associate Aff. ¶¶ 6–8; Tr. 627:3–5, 644:24–645:2.

Associate.  Ms. Childs states that Defendant's Associate asked Ms. Griffin why she was at the courthouse and requested to see her subpoena.  Childs Aff. ¶ 6.  Ms. Childs states that Defendant's Associate did not raise her voice at Ms. Griffin and acted in a professional and non-threatening manner.  Childs Aff. ¶ 6.  Ms. Childs further states that after Defendant's Associate returned to the courtroom, Ms. Childs continued speaking with Ms. Griffin, who laughed about the interaction and "did not appear to be upset or concerned about" it.  Childs Aff. ¶ 7.

Two other defense witnesses, though not in direct proximity to the conversation between Defendant's Associate and Ms. Griffin, were present in the courtroom hallway during the encounter and confirm various aspects of these accounts in affidavits opposing Plaintiff's motion. [*See* ECF Nos. 211 ("Martin Aff."), 212 ("Dorfman Aff.")].  Spencer Martin does not recall Defendant's Associate speaking with Ms. Griffin, but he exchanged pleasantries with Ms. Griffin and states that Ms. Griffin did not appear upset.  Martin Aff. ¶¶ 5, 7.  Vyacheslav Dorfman does not recall an interaction between Defendant's Associate and Ms. Griffin either, but he greeted Ms. Griffin and describes their exchange as cordial.  Dorfman Aff. ¶¶ 5, 7.  Moreover, the Court observed Ms. Griffin's demeanor and testimony in the courtroom.  She did not appear apprehensive or distraught beyond the general nervousness that witnesses often display when testifying at trial.  Ms. Griffin cogently answered both counsel's questions and she did not falter or hesitate in her responses.  *See* Tr. 645–653.

Plaintiff makes much of Defendant's request to redact a portion of the trial transcript as evidence that "counsel knew they had acted improperly in successfully intimidating Ms. Griffin" and attempted to cover up their misconduct.  *See* Pl. Mem. 4–5; [ECF No. 189-2 ("Schnur Aff.") ¶ 16].  The Court rejects Plaintiff's mischaracterization of Defendant's request, which is belied by the record.  During deliberations, the jury sent a note stating "Dorto's deposition."  Tr. 809:6–10. The Court construed the note as a request for the deposition of Michael Dorto, from which

designated portions of testimony were read into the record at trial as Mr. Dorto was an unavailable witness. Tr. 809:10–11; *see* Tr. 602–629 (Mr. Dorto's testimony). In response to the jury's request, the Court instructed counsel, jointly, to "locate the pages with Dorto testimony, and [the Court] can make copies." Tr. 809:21–22. After a brief recess during which counsel conferred, a member of Plaintiff's counsel stated that Mr. Dorto's testimony had been identified and that "I think that [defense counsel] was going to email it to the Court so it can be printed out."[13] Tr. 810:4–6. Defendant's Associate then emailed the Court, copying Plaintiff's counsel, with an attachment containing the transcript pages of Mr. Dorto's testimony. In the body of her email, Defendant's Associate wrote: "Please see the Dorto deposition designations attached. Please remove 624 through 627 as counsel's soliloquy." [ECF. No. 189-3]. The requested redacted pages are entirely inclusive of a sidebar in which the Court and counsel discussed logistical and scheduling matters, including the timing of Ms. Griffin's testimony and whether Plaintiff properly noticed Ms. Griffin as a witness. *See* Tr. 624–627. It was necessary for Defendant to have requested this redaction. The intervening sidebar was not "Dorto's deposition" as the jury requested, and it would not have been proper for the jury to consider. *See United States v. Joseph*, No. 20-CR-603 (PKC), 2022 WL 336975, at *5 n.3 (S.D.N.Y. Feb. 4, 2022) ("[A] jury request for a read-back is often dealt with in consultation with both sides *by the preparation of an edited transcript (redacted to eliminate sidebars and other extraneous matter) that is then delivered to the jury room.*" (emphasis added)), *aff'd*, No. 22-1552, 2024 WL 1827291 (2d Cir. Apr. 26, 2024). Indeed, Defendant requested the redactions *solely* for the benefit of the jury; Defendant did not

---

[13] Based on this statement to the Court and Defendant's account of counsel's discussion, it appears that Plaintiff's counsel consented to the redactions. *See* Associate Aff. ¶ 15.

propose redactions to the public trial transcript, which is filed on the docket and contains the complete sidebar colloquy at issue.

In sum, the Court cannot say that Plaintiff's evidence of Defendant's alleged witness tampering comes close to "instantly tilt[ing] the evidentiary scales in the affirmative when weighed against the evidence" to the contrary. *Geo-Grp. Commc'ns*, 2023 WL 6235160, at *11 (quoting *Colorado v. New Mexico*, 467 U.S. at 316). But even if Defendant's behavior did amount to misconduct, which the Court does not find supported by clear and convincing evidence, Plaintiff would not be entitled to vacatur of the judgment and a new trial because Plaintiff has not established that Defendant substantially interfered with Plaintiff's opportunity to fully and fairly present her case. *See Thomas*, 293 F.R.D. at 503–04. Although Plaintiff "need not show that the outcome would have been different absent the misconduct," she must establish that Defendant's conduct "precluded inquiry into a plausible theory of liability, denied [her] access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Id.* at 504 (quoting *Catskill*, 286 F. Supp. 2d at 316). Conduct "does not substantially interfere with the moving party's presentation of their case if the evidence turns out to be cumulative, insignificant, or of marginal relevance." *Id.* (cleaned up) (quoting *Catskill*, 286 F. Supp. 2d at 316).

Plaintiff contends that had Defendant not intimidated Ms. Griffin, "Ms. Griffin would have testified 'in detail as to the disparate treatment [Plaintiff] suffered,'" including "the vast discrepancies in discipline and the hostile work environment [Plaintiff] endured." Pl. Mem. 5–6 (quoting Griffin Aff. ¶¶ 17–18). In addition, Plaintiff seems to claim that Ms. Griffin *would not* have testified, as she did, to unfair treatment that she personally faced while employed by Defendant. *See* Pl. Mem. 5. Plaintiff complains that Ms. Griffin's testimony about her own

experience gave the jury the impression that Plaintiff did not suffer disparate treatment because Defendant's company is "just . . . a generally bad place to work."  Pl. Mem. 5.

The Court does not find these arguments persuasive.  As noted, Ms. Griffin responded fully to Plaintiff's counsel's questions on direct examination.  Plaintiff's counsel repeatedly questioned Ms. Griffin about discipline or hostility Plaintiff faced that other employees did not, the precise subject matter Plaintiff claims Ms. Griffin would have addressed.  *See* Tr. 647:4–5 ("Did you ever observe [Plaintiff] being treated in a way different than other employees in the office were treated?"), 649:17–19 ("Were there any other actions that you observed Elissa Seidman take toward, direct towards, [Plaintiff] that were not directed at yourself?"), Tr. 650:8–10 ("Did you ever witness any increased scrutiny of [Plaintiff] directly or being monitored in a way that you were not monitored?").  When Ms. Griffin responded to these questions in the affirmative, she provided detail as to several ways in which Plaintiff was subject to differential treatment by Defendant, such as being denied support from Ms. Griffin and Ms. Childs at the direction of Ms. Seidman, Tr. 649:17–21, 650:2–6, and being accused of stealing a company parking pass, Tr. 650:17–651:6.  Plaintiff does not elaborate, nor does Ms. Griffin's affidavit state, what Ms. Griffin's suppressed testimony might have consisted of, such as any details about "the vast discrepancies in discipline and the hostile work environment" that Plaintiff faced.  Griffin Aff. ¶ 18.  If Plaintiff's counsel was dissatisfied with Ms. Griffin's answers or wished for Ms. Griffin to elaborate on her responses regarding Plaintiff's disparate treatment, Plaintiff's counsel could and should have posed additional questions to her.

Plaintiff's suggestion that, but for the hallway interaction with Defendant's Associate, Ms. Griffin would not have given testimony regarding her own unfair treatment, is unavailing.  The Court rejects Plaintiff's intimation that Ms. Griffin lied, supposedly due to fear, in testifying to her own negative experiences under Defendant's employ.  *See* Pl. Mem. 5.  Ms. Griffin testified under

oath and does not state in her affidavit that she offered any false testimony; the Court thus accepts her testimony as true. As an initial matter, it was Plaintiff's counsel who first asked Ms. Griffin questions about her own experiences. *See* Tr. 646:8–9 ("Have you ever been subject to being sent to the learning center for [cursing]?"), 647:22 ("Did it make it more difficult for you to do your work?"). To the extent Ms. Griffin's testimony about her own treatment by Defendant was nonresponsive to Plaintiff's counsel's questions, Plaintiff's counsel could have moved to strike those portions of testimony. She did not. In addition, when Plaintiff's counsel posed follow-up questions to Ms. Griffin, attempting to draw out details about mistreatment that Plaintiff endured that Ms. Griffin *did not*, Ms. Griffin at times responded in the affirmative and provided detail. *See* Tr. 649:17–650:6, 650:8–651:6. Ms. Griffin maintained, however, that some incidents of unfair treatment, such the timing of bathroom breaks, occurred to her as well. *See* Tr. 651:19–652:12. Ms. Griffin reiterated this position on cross-examination, and Plaintiff's counsel declined the opportunity for redirect. *See* Tr. 653:15–25.

At bottom, the Court does not find that the interaction between Ms. Griffin and Defendant's Associate, to the extent it affected Ms. Griffin and her testimony at all, "denied [Plaintiff] access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Thomas*, 293 F.R.D. at 504 (quoting *Catskill*, 286 F. Supp. 2d at 316). And because Ms. Griffin does not elaborate on the additional testimony she would have offered to support Plaintiff's claims, any possibly foregone testimony is "cumulative, insignificant, or of marginal relevance." *Id.* (quoting *Catskill*, 286 F. Supp. 2d at 316); *see also Anderson v. New York*, No. 07 CIV. 9599 SAS, 2012 WL 4513410, at *5 (S.D.N.Y. Oct. 2, 2012) ("At best, [allegedly tampered witness] would have been a tangential witness given the limited

extent of her testimony.  Thus, plaintiff was not prevented from fully and fairly presenting her case as a result of [witness'] absence.").

B.  The Verdict Is Not Inconsistent

Plaintiff argues that the jury's verdict is inconsistent for three reasons: (1) that the jury found for Plaintiff on her retaliation claim under the NYCHRL, but against Plaintiff on her retaliation claims under the ADA and the NYSHRL; (2) that the jury awarded Plaintiff back pay, but not front pay; and (3) that the jury's back pay award failed to account for Plaintiff's benefits in addition to her salary.  Pl. Mem. 8–10.

The Court need not consider these arguments because they are waived.  "It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006); *see also Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 47 (2d Cir. 2015) ("In short, by raising its inconsistency argument for the first time in its post-trial motion papers filed long after the jury was excused, the [defendant] waived its objection."); *Tardif*, 2023 WL 2495897, at *6–*7 (finding waiver).  Here, Plaintiff failed to raise her inconsistency arguments following the reading of the verdict and the polling of each juror prior to the Court's excusing the jury, thus waiving them.[14]  *See* Tr. 812:15–817:15.

Even if Plaintiff had preserved her inconsistency objections, none is meritorious.  "When the jury's findings appear to be inconsistent with each other, the Seventh Amendment requires that

---

[14] Plaintiff had a duty to raise her inconsistency arguments even though the Court did not specifically call for counsel's objections prior to excusing the jury.  *See Anderson Grp.*, 805 F.3d at 48 (rejecting argument that "district court's speedy dismissal of the jury prevented [party] from voicing an objection"); *Tardif*, 2023 WL 2495897, at *7 (noting that party "could have objected after the Court had finished reading the jury's verdict and before the jurors were polled, or as the jurors were leaving the courtroom, when there was still time for the Court to recall them").  The Court also notes that after the jury was excused, the Court asked if either party had anything further for the record and Plaintiff's counsel stated that she did not.  *See* Tr. 817:9–12.

21

if there is a view of the case which makes the jury's answers to special interrogatories consistent, the court must adopt that view and enter judgment accordingly." *Auwood v. Harry Brandt Booking Off., Inc.*, 850 F.2d 884, 891 (2d Cir. 1988) (internal quotation marks omitted)).  Here, to the extent the jury's findings "appear to be inconsistent" at all, they are easily harmonized.  *See id.*

First, Plaintiff is incorrect in her contention that the jury's verdict for Plaintiff on her NYCHRL retaliation claim, but against Plaintiff on her ADA and NYSHRL retaliation claims, is inconsistent.  *See* Pl. Mem. 8.  As noted above, *see supra* Part I, the legal standards for retaliation under the NYCHRL, on the one hand, and the ADA and the NYSHRL, on the other, differ in two respects:  First, the NYCHRL requires only conduct that is "reasonably likely to deter a person from engaging in" protected activity, not a materially adverse change in the terms and conditions of the plaintiff's employment, and second, the NYCHRL imposes a more lenient "motivating factor" causation standard, rather than requiring but-for causation.  *Mihalik*, 715 F.3d at 110 n.8, 112, 116; *see Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877 (LAP), 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021) (noting the "two important exceptions" in the NYCHRL's retaliation standard as compared to the ADA and the NYSHRL, and explaining these differences).  The Court's instructions to the jury as to Plaintiff's NYCHRL retaliation claim reflected this standard, stating:  "The first two elements of [a NYCHRL retaliation] claim are the same as for the plaintiff's retaliation claim under the ADA and the [NYSHRL] that I've just discussed with you," and proceeding to explain the differences as to the third and fourth elements.  Tr. 775:21–777:10, 777:22–778:1.  Plaintiff did not object to any portion of this instruction.

In her brief in support of her motion for a new trial, Plaintiff selectively cites to a case that states:  "The NYCHRL imposes an identical standard to that of the NYSHRL, 'except that the plaintiff need not prove any "adverse" employment action.'" *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020) (quoting *Leon v. Columbia Univ. Med. Ctr.*, No.

11-CV-08559 NSR, 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013), *aff'd*, 597 F. App'x 30 (2d Cir. 2015)); *see* Pl. Mem. 8.  Plaintiff ignores, however, that this case applied a more lenient causation standard to claims under the NYSHRL.  *See Benzinger*, 447 F. Supp. 3d at 124 (stating, as to the causal element of a NYSHRL retaliation claim, that there need only be *some* "causal connection between the protected activity and the adverse employment action").  Thus, in the *Benzinger* case, the only practical difference between the NYSHRL and NYCHRL legal standards was the character of the Defendant's action, because the NYCHRL's liberal causation requirement applied to *both* claims.  Here, however—with the parties' agreement—the Court instructed the jury that a but-for causation standard applied to Plaintiff's NYSHRL retaliation claim, consistent with the weight of authority in this District.[15]  *See* Tr. 773:24–774:7, 775:2–8.  In addition, Plaintiff mistakenly cites to cases that pre-date the Local Civil Rights Restoration Act of 2005, in which the New York City Council amended the NYCHRL such that it demanded a broad, independent analysis and was no longer "coextensive with its federal and state counterparts."  *Mihalik*, 715 F.3d at 108–09 (clarifying the applicable standard and noting that, in the wake of the Restoration Act, "district courts continued—erroneously—to apply federal standards to NYCHRL claims");

---

[15] The Second Circuit and the New York Court of Appeals have not conclusively determined that but-for causation applies to retaliation claims brought under the NYSHRL.  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 333 n.7 (S.D.N.Y. 2020); *see Kleehammer v. Monroe Cnty.*, 583 F. App'x 18, 21 (2d Cir. 2014) ("We have not decided whether the but-for-causation standard also now applies to retaliation claims under NYSHRL."); *Zann Kwan*, 737 F.3d at 847 n.7; *Holcomb v. State Univ. of New York at Fredonia*, 698 F. App'x 30, 31 (2d Cir. 2017).  However, courts in this District frequently apply a but-for causation standard to NYSHRL claims.  *See Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases and noting that "[t]he [Second] Circuit . . . has implicitly applied the but-for standard to NYSHRL claims on several occasions"); *accord Turner v. MTA Metro-N. R.R.*, No. 17-CV-9168 (VSB), 2024 WL 1177227, at *6 (S.D.N.Y. Mar. 19, 2024).  If Plaintiff took issue with the Court's following this weight of authority, she was obligated to raise it at the charging conference.

*see* Pl. Mem. 8 (quoting *Kealy v. Consol. Edison Co. of New York*, No. 98 CIV.2210 (MGC), 2002 WL 1552027, at *6 (S.D.N.Y. July 15, 2002)).

Applying the elements of a NYCHRL retaliation claim that were accepted by the parties and articulated to the jury in this case, Plaintiff's argument falls apart. As noted above, the evidence at trial supported a finding for Plaintiff on the first three elements of her NYCHRL retaliation claim: (1) that Plaintiff engaged in protected activity; (2) that Defendant was aware of Plaintiff's protected activity; and (3) that Defendant's conduct was reasonably likely to deter Plaintiff from engaging in protected activity, and, indeed, that Plaintiff suffered a quintessential adverse employment action—termination. *See supra* Part I; Pl. Mem. 8. But it was reasonable and legitimate for the jury to have found that, all else equal, although Plaintiff met the lenient "motivating factor" causation standard of the NYCHRL, she failed to satisfy the but-for causation standard of the ADA and the NYSHRL. Accordingly, the jury's verdict for Plaintiff on her NYCHRL retaliation claim, but not her ADA and NYSHRL retaliation claims, is not inconsistent and is not grounds for a new trial.

Second, the jury's failure to award front pay is not an inconsistency that warrants a new trial. While Plaintiff is correct that an award of front pay is *permitted* under the NYCHRL, *see Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 250 (E.D.N.Y. 2014), it was within the province of the jury to determine that its award of compensatory damages in the form of back pay, standing alone, made Plaintiff whole. *Cf. Barbano v. Madison Cnty.*, 922 F.2d 139, 146 (2d Cir. 1990) (district court did not abuse its discretion in declining to award front pay where back pay made plaintiff whole); *McIntosh v. Irving Tr. Co.*, 873 F. Supp. 872, 879–80 (S.D.N.Y. 1995) ("The jury plainly determined, in accordance with the instructions it was given, that an award of many years' salary to the plaintiff was sufficient to make him whole, [and] that no award of future damages was necessary to make him whole . . . ."); *Quinby v. WestLB AG*, No. 04 CIV.7406 WHP, 2008 WL

3826695, at *6 (S.D.N.Y. Aug. 15, 2008) ("find[ing] no basis to disregard the jury's determination on front pay" where it made a "reasonable decision not to award front pay" because award of back pay made plaintiff whole).  For example, the jury could have found, as Defendant alleged, that Plaintiff did not adequately mitigate her damages to justify an award of front pay.  *See Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2023 WL 2049800, at *37 (S.D.N.Y. Feb. 16, 2023) (noting the requirement that an NYCHRL plaintiff mitigate damages and collecting cases); *McIntosh*, 873 F. Supp. at 879; *Quinby*, 2008 WL 3826695, at *6; Tr. 784:3–14. Alternatively, the jury could have found that Plaintiff "would have retired or voluntarily resigned or obtained or should have obtained other employment" as of, or prior to, the date of its verdict, and thus that she was not entitled to front pay.  Tr. 785:21–786:1; *see McIntosh*, 873 F. Supp. at 879.  Notably, Plaintiff joined in proposing and did not object to the Court's posing separate questions regarding back pay and front pay on the special verdict form, *see* Special Verdict Form, indicating Plaintiff's acceptance that the jury permissibly could award one remedy, but not the other.  *See* Tr. 11:17–20; *McIntosh*, 873 F. Supp. at 879.

Third, the jury's failure to award Plaintiff the value of her benefits is not an inconsistency that warrants a new trial.  Once again, Plaintiff is correct that a jury *may* award a prevailing plaintiff the value of employee benefits, such as pension contributions, as part of a back pay award under the NYCHRL.  *See Sass*, 6 F. Supp. 3d at 258; *Press v. Concord Mortg. Corp.*, No. 08 CIV. 9497 PKC GWG, 2009 WL 6758998, at *6 (S.D.N.Y. Dec. 7, 2009), *report and recommendation adopted as modified*, No. 08 CIV. 09497 KTD, 2010 WL 3199684 (S.D.N.Y. Aug. 11, 2010). However, such an award is not mandatory.  *See Press*, 2009 WL 6758998, at *6 (declining to award the value of lost benefits).  The Court's instructions to the jury appropriately captured this standard, stating that the jury should consider, in assessing an award of back pay, "any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that

the plaintiff would have received had the plaintiff not been discriminated or retaliated against."

Tr. 784:15–24.  The special verdict form—again, jointly proposed by Plaintiff and to which she

did not object—did not require the jury to apportion its compensatory damages award (whether in

the form of back pay or front pay) among Plaintiff's salary and benefits.  *See* Special Verdict Form.

Therefore, it is just as likely as not that the jury's back pay award *did* incorporate Plaintiff's lost

benefits.  Plaintiff assumes that the jury did not award her lost benefits because the jury's award

did not represent the full purported value of those benefits.  *See* Pl. Mem. 10; Pl. Reply 9.  But it

was for the jury to decide—if it found that Plaintiff was entitled to lost benefits at all—whether

the evidence of the value of the benefits, including Plaintiff's testimony estimating their value

based on her own calculations, was credible.   *See* Tr. 238:1–241:25 (Plaintiff's testimony

estimating her total back pay, including lost benefits, to be $1.2 million).  Accordingly, the jury's

failure to award Plaintiff the full estimated value of her lost benefits as part of its back pay award

is not an inconsistency that warrants a new trial.

     C.  <u>The Court Properly Excluded Plaintiff's Medical Records</u>

     Plaintiff finally contends that the Court's exclusion of Plaintiff's medical-record evidence

warrants a new trial.  Pl. Mem. 12–14.  It does not.

     The Court excluded Plaintiff's medical records primarily under Rule 902(11) of the Federal

Rules of Evidence, which requires that, as to evidence that meets the hearsay exception for

business records under Rule 803(6)(A)–(C) and is authenticated by certification (rather than the

testimony of a custodian or qualified witness), "[b]efore the trial or hearing, the proponent must

give an adverse party reasonable written notice of the intent to offer the record—and must make

the record and certification available for inspection—so that the party has a fair opportunity to

challenge them."  Fed. R. Evid. 902(11); *see* Tr. 250:16–253:24.  Although Defendant was in

possession of Plaintiff's medical records for years, Plaintiff did not provide a doctor's certification

of the records until the day Plaintiff intended to offer the records into evidence at trial [ECF No. 208-3], denying Defendant the opportunity to inspect the certifications, impeach or test the certifications, and lodge any objections. *See* Tr. 250:16–21, 251:3–21, 252:17–253:12; *see United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) ("Rule 902(11)'s notice requirement is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." (internal quotation marks omitted)).  Plaintiff's counsel conceded that she did not "have a good reason" for the delay "aside from" difficulty in dealing with Plaintiff's doctor's third-party providers.  Tr. 251:19–24.  The Court's exclusion of these records was not erroneous: district courts frequently exclude otherwise admissible business records due to untimely offered certifications.  *See United States v. Brown*, 553 F.3d 768, 793 (5th Cir. 2008) (holding that district court did not abuse its discretion in excluding business records certified by untimely affidavit, and noting that "[t]he notice requirements of Rule 902(11) are in place precisely to ensure that evidence to be accompanied by an affidavit can be vetted for objection or impeachment in advance"); *HSBC Ins. Ltd. v. Scanwell Container Line Ltd.*, No. 00-CV-5729, 2001 WL 1875851, at *2 (C.D. Cal. July 25, 2001) (excluding business records because of "insufficient notice" under Rule 902(11), where "Plaintiff only provided the receipts and declaration shortly before trial so there was insufficient time for the opposing parties to challenge them").

Plaintiff also argues that her medical records were admissible pursuant to the hearsay exception for statements made for medical diagnosis or treatment.  *See* Pl. Mem. 14; Fed. R. Evid. 803(4).  The Court provisionally agreed at trial, as it stated to the parties at sidebar.  *See* Tr. 245:11–14, 250:7–15.  However, Plaintiff's failure properly to authenticate the documents rendered them inadmissible under this exception as well.  *See Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 501 (S.D.N.Y. 2013) (noting that statements admissible under Rule 803(4) must be

"[p]roperly authenticated"); *Djangmah v. Falcione*, No. 08 CIV. 4027 KPF, 2013 WL 6388364, at *5 (S.D.N.Y. Dec. 5, 2013) ("[I]ntroducing apparent hearsay evidence under the medical records exception requires the party seeking introduction to lay a foundation—that is, to demonstrate that the records at issue are what they seem to be and that they satisfy the requirements of the hearsay exception." (internal quotation marks omitted)); Tr. 253:2–5.  Although the foundation required for medical records admitted under Rule 803(4) need not be offered by a custodian, qualified witness, or formal certification (as for a business record), *no* foundation was laid here.  Plaintiff's counsel attempted to introduce the medical records during Plaintiff's direct examination.  *See* Tr. 184:5–185:8, 206:17–208:18; Pl. Mem. 14 (citing Plaintiff's testimony as proper foundation).  But "no witness [Plaintiff called or] intend[ed] to call," including herself, "could possibly establish that the records are what they appear to be or that they conform to the requirements of" Rule 803(4).  *Djangmah*, 2013 WL 6388364, at *6 (finding that medical records lacked foundation where plaintiff proposed testimony only from "himself, several members of his family, and two eyewitnesses to the scene" of traffic stop).[16]

In any event, "an erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected, as when a jury's judgment would be swayed in a material fashion by the error." *Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017) (quoting *Lore*, 670 F.3d at 155); *see Hill v. Quigley*, 336 F. Supp. 3d 283, 296 (S.D.N.Y. 2018) (applying this standard in the context of a Rule 59(a) motion), *aff'd*, 784 F. App'x 16 (2d Cir. 2019).  Even if the Court's

---

[16] Plaintiff belatedly proposed calling Plaintiff's doctors to certify the records through live testimony, which the Court properly denied because Plaintiff did not disclose the physicians as trial witnesses.  *See* Tr. 253:15–24; Fed. R. Civ. P. 37(c)(1).

exclusion of the medical records were erroneous, Plaintiff has not shown that the exclusion affected her substantial rights.

Plaintiff argues that if the Court had admitted her medical records, the jury would have awarded her emotional distress damages. *See* Pl. Mem. 14. However, the Court instructed the jury that "[p]sychiatric or other medical treatment is not a precondition to recovery" of emotional distress damages, and that Plaintiff may prove her claim for emotional distress damages through her own testimony alone, if corroborated by other evidence in the record, such as the objective circumstances of Defendant's violation. Tr. 787:12–18. Plaintiff testified at length as to the physical and mental symptoms she experienced during her employment with Defendant and following her termination, including anxiety, stress, migraines, lack of sleep, and panic attacks; the medical treatment she sought for these conditions; and that she was prescribed medication for them. *See* Tr. 183:12–184:3, 185:10–20, 255:6–257:13. Plaintiff has not shown that admission of her medical records would have materially supplemented her own testimony. In fact, certain statements contained within the medical records could be read to *contradict* Plaintiff's testimony insofar as they indicate that Plaintiff's symptoms may have been the result of other causes. *See* Tr. 254:1–4. In addition, the admission of the medical records would not have nullified other evidence, elicited by Defendant, that Plaintiff's claimed emotional distress may have been caused by personal circumstances, such as Plaintiff's cancer diagnosis, her commute, her car accident, or her grief, and thus was not compensable by the jury in this case. Tr. 358:22–360:1, 364:19–366:21. In sum, the Court did not err in excluding Plaintiff's medical records, which did not affect Plaintiff's substantial rights.

Accordingly, because none of Plaintiff's asserted grounds for a new trial convinces the Court that the jury reached a "seriously erroneous result or that the verdict is a miscarriage of

justice," *Amato*, 170 F.3d at 314 (quoting *Atkins*, 143 F.3d at 102), Plaintiff's motion for a new trial is DENIED.

## III.    Plaintiff's Motion to Amend the Judgment

Plaintiff argues that even if the Court does not order a new trial, it should amend its judgment pursuant to Rule 59(e) due to an error in the Court's calculation of pre-judgment interest. Pl. Mem. 11–12.

The Court's judgment awarded "pre-judgment interest at 9% per annum, commencing on the 'single reasonable intermediate date' of April 9, 2022."   Judgment (citing N.Y. C.P.L.R. §§ 5001(b), 5004(a)).   Section 5001(b) of the CPLR provides that "[w]here . . . damages were incurred at various times," pre-judgment interest shall be calculated "upon all of the damages from a single reasonable intermediate date."[17]   N.Y. C.P.L.R. § 5001(b).   A district court has discretion to determine whether a plaintiff's damages were incurred at various times and thus that the use of a "single reasonable intermediate date" is appropriate.   *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998), *holding modified on other grounds by Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81 (2d Cir. 2001).   In addition, "[t]he date of choice is left to the district court's discretion, as is the method of calculating the 'single reasonable intermediate date.'" *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016) (citing *Marfia*, 147 F.3d at 91); *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)

---

[17] "Although the NYCHRL does not expressly provide for prejudgment interest on an award of backpay, the New York Court of Appeals has interpreted the analogous NYSHRL as doing so," and courts have applied the same principle to awards under the NYCHRL.   *Sass*, 6 F. Supp. 3d at 258–59; *see Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 512 (S.D.N.Y. 2007) (applying the CPLR to calculation of pre-judgment interest on jury's NYCHRL back pay award).

("[S]ection 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest.").

In entering judgment in this case, the Court used the "single reasonable intermediate date" methodology because the evidence supported that Defendant engaged in conduct that was reasonably likely to deter Plaintiff from engaging in protected activity at various times following her filing of the EEOC complaint through her termination. *See supra* Part I. The Court then used the "single reasonable intermediate date" of April 9, 2022, which is the midpoint between Defendant's July 30, 2020 termination letter to Plaintiff and the Court's December 18, 2023 judgment. The Court, in its discretion, found this calculation appropriate because New York courts have held that in employment discrimination cases, "[t]he intermediate date would be the date halfway between the date the plaintiff was first deprived of a paycheck and the date of the verdict." *Jattan v. Queens Coll. of City Univ. of New York*, 64 A.D.3d 540, 542, 883 N.Y.S.2d 110, 113 (2d Dep't 2009); *see Argyle Realty Assocs. v. New York State Div. of Hum. Rts.*, 65 A.D.3d 273, 286, 882 N.Y.S.2d 458, 468 (2d Dep't 2009) ("Given that the complainant incurred damages for each pay period between her unlawful termination . . . in November 1995 and her commencement of new employment in September 1996, it was proper to calculate interest from April 15, 1996, as a 'single reasonable intermediate date.'"); *Sass*, 6 F. Supp. 3d at 259–60 (using midpoint between plaintiff's termination and date of judgment).

Plaintiff does not dispute that "[p]re-judgment interest on a claim for violation of the NYCHRL accrues 'from an intermediate date between the date of termination and the date of judgment.'" Pl. Mem. 11 (quoting *Sass*, 6 F. Supp. 3d at 259). However, Plaintiff argues that the Court should have used the April 3, 2019 date of "Defendant's decision to terminate Plaintiff" as

its starting point, not the July 30, 2020 date that the termination was communicated to Plaintiff and took effect.  Pl. Mem. 12; *see* Tr. 641:6–17.

Plaintiff's argument does not persuade the Court that its calculation of pre-judgment interest is a clear error requiring amendment of the judgment.  *See Metzler*, 970 F.3d at 142. Although the evidence at trial established that Defendant determined on April 3, 2019 that Plaintiff's employment would be terminated, Defendant did not communicate that decision to Plaintiff until July 30, 2020, per Defendant's company policy, as Plaintiff was on medical leave at the time of the decision.  *See* Tr. 469:20–470:6, 641:6–17.  Although Plaintiff was not receiving a salary at the time of Defendant's termination letter because of her leave, Plaintiff remained formally employed by Defendant and continued to receive long-term disability benefits, at a rate of one-half her salary, through her date of termination.  *See* Tr. 237:14–18.  Defendant's letter informed Plaintiff that her benefits would cease on July 31, 2020.[18]  Tr. 513:13–16; *see* Tr. 516:6–16 (testimony that when employees are terminated, their benefits cease at the end of the month of their termination).  Indeed, in Plaintiff's rebuttal summation, Plaintiff's counsel stated that Plaintiff was "terminated as of July 30."  Tr. 731:7.  The Court acted within its discretion in selecting July 30, 2020 as the starting date for its calculation of a "single reasonable intermediate date" for the commencement of pre-judgment interest, as that is the date on which Plaintiff was actually

---

[18] In fact, as Plaintiff testified, she continued to receive long-term disability payments for about one year following her termination.  *See* Tr. 235:2–25.  The jury's verdict accounted for this overpayment by offsetting the entirety of Plaintiff's long-term disability payments from Plaintiff's damages award, as the parties stipulated.  *See* Special Verdict Form; Tr. 361:12–14.

terminated and on which she was "first deprived of" her benefits. *Jattan*, 64 A.D.3d at 542. Accordingly, Plaintiff's motion to amend the judgment is DENIED.

## IV.    Defendant's Motion to Strike

Defendant moves, unopposed, to strike two documents submitted by Plaintiff: (1) a "response in support of motion," *see* Pl. Sur-reply; and (2) the final two pages of Plaintiff's reply brief in support of her motion for a new trial, *see* Pl. Reply 11–12.  Def. Mot. Strike 1.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court, on its own or on motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although the Rule does not expressly authorize the striking of documents other than pleadings, a district court has "inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." *Sierra v. United States*, No. 97 CIV. 9329 (RWS), 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998); *accord Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012).

Here, both documents that Defendant seeks to strike were filed by Plaintiff without leave of Court, in violation of the Court's Individual Rules of Practice in Civil Cases.[19]  First, Plaintiff's "response in support of motion" appears to be either a response to Defendant's reply in support of Defendant's motion for renewed JMOL, or a supplemental filing (further to Plaintiff's already-filed reply) in support of Plaintiff's own motion for a new trial.  *See* Pl. Sur-reply.  In either case, the Court will construe the document as a sur-reply.  *See, e.g.*, *Trombetta v. Novocin*, No. 18 Civ. 993 (RA) (SLC), 2020 WL 6365171, at *1 (S.D.N.Y. Oct. 29, 2020) (construing a plaintiff's

---

[19] This is not the first instance of Plaintiff's filing superfluous or repetitious documents without leave of Court, *see supra* n.2, which occurred throughout this litigation and at trial.  *See, e.g.*, Tr. 2:9–16.

"second response" as a sur-reply). "Sur-replies are appropriate only in 'the exceptional though rare case' when a 'party demonstrates to the court that papers to which it seeks to file a reply raise new issues which are material to the disposition of the question before the court'" or when the court orders additional briefing for its own benefit. *S.E.C. v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022) (quoting *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975)). Neither circumstance is met here. Indeed, Plaintiff did not explain the necessity of the document because she did not request leave to file it, as the Court's Individual Rules require. *See* Indiv. Civ. R. 4.A.iii ("Sur-reply memoranda will not be accepted without prior permission of the Court."). Moreover, a cursory review of the document shows that it simply repeats arguments made in Plaintiff's motion and her opposition to Defendant's motion, attempting to direct the Court to the "truth" of the evidence presented at trial. *See* Pl. Sur-reply. The Court is aware of the legal standards it must apply in its resolution of the present motions, including the appropriate level of deference to the jury's weighing of the evidence. And, notably, the majority of Plaintiff's sur-reply cites to Defendant's opposition to Plaintiff's motion for a new trial, to which Plaintiff already responded in her reply brief. *See* Pl. Sur-reply; Pl. Reply. "[R]epetition of arguments made in prior submissions will not be condoned and is scrupulously to be avoided." *Int'l Bus. Machs.*, 66 F.R.D. at 384.

Second, Plaintiff's reply brief in support of her motion for a new trial exceeds the page limits set forth in the Court's Individual Rules, which state that "reply memoranda are limited to 10 pages." Indiv. Civ. R. 4.A.iii. "[I]t is within the Court's discretion to strike memoranda for failing to abide by the Court's Individual" Rules. *Catz v. Precision Glob. Consulting*, No. 19 CIV. 7499 (ER), 2021 WL 1600097, at *4 (S.D.N.Y. Apr. 23, 2021). District courts "throughout the Second Circuit have typically exercised such discretion only when the opposing party is prejudiced by the violation or did not have the opportunity to respond in its own memorandum." *Id.* Here,

Plaintiff filed excess pages in a reply brief, to which Defendant did not have an opportunity to respond.

Nonetheless, despite Plaintiff's repeated filing of unauthorized and overlength submissions in violation of the Court's Individual Rules, the Court considered Plaintiff's unauthorized sur-reply and excess reply brief pages in resolving the present motions, but did not find them to be persuasive in that they did not add to Plaintiff's arguments.  Accordingly, Defendant's motion to strike is DENIED.

## V.    Defendant's Request for Leave to File a Rule 11 Motion

Finally, Defendant requests leave to file a motion seeking sanctions against Plaintiff under Federal Rule of Civil Procedure 11 in connection with the allegations of witness tampering made in Plaintiff's motion for a new trial.  *See* Def. R. 11 Ltr.  Under Rule 11, an attorney filing a "pleading, written motion, or other paper" must certify, "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Pursuant to Rule 11(c), "[a] court may sanction an attorney, law firm, or party that violates Rule 11(b), but only after providing notice and a reasonable opportunity to respond." *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 13 (2d Cir. 2010).  A Rule 11 motion "must not only specify the defect for which sanctions are sought but must not be filed

until the alleged violator is afforded twenty-one days to withdraw or correct the offending document." *Id.*

"Since the Federal Rules gives . . . counsel an absolute right to file [a Rule 11] motion, the Court will not prohibit [Defendant's] counsel from filing such a motion." *Berardi v. Fundamental Brokers, Inc.*, No. 89 CIV. 5143 (JSM), 1992 WL 27169, at *4 (S.D.N.Y. Feb. 5, 1992); *see Uppal v. W. Express, Inc.*, No. 15 Civ. 9976 (AT) (RWL), 2018 WL 10579447, at *1 (S.D.N.Y. Nov. 27, 2018) ("Defendants have the right to move for sanctions under Federal Rule of Civil Procedure 11, if they believe in good faith that such a motion is warranted."). Moreover, while the Court reserves decision on the merits of Defendant's forthcoming motion, Defendant has a non-frivolous basis for making a Rule 11 motion. As one example of potentially sanctionable conduct, the record supports that Plaintiff deliberately misrepresented the nature of Defendant's request to redact portions of the trial transcript—*to which Plaintiff apparently consented*—in an effort to drum up evidentiary support for her allegations of witness tampering. *See supra* Section II.A; Pl. Mem. 4–5; Schnur Aff. ¶ 16.

Accordingly, a pre-motion conference is WAIVED and Defendant is GRANTED leave to file a motion for sanctions against Plaintiff pursuant to Rule 11.[20]  The briefing schedule on Defendant's motion shall be as follows: Defendant's motion due by August 29, 2024; Plaintiff's

---

[20] The Court finds that Defendant complied with the safe harbor provisions of Rule 11(c)(2) by filing its pre-motion letter following correspondence with Plaintiff over a twenty-one day period in which Defendant advised Plaintiff of its intent to seek Rule 11 sanctions and Plaintiff refused to withdraw her allegations or amend her motion for a new trial. *See* Def. R. 11 Ltr. Exs. A–D. In addition, Defendant's pre-motion letter, which Plaintiff opposed, gave Plaintiff additional notice of the basis for Defendant's contemplated motion. *See Johnson ex rel. United States v. The Univ. of Rochester Med. Ctr.*, 715 F. Supp. 2d 427, 429 (W.D.N.Y. 2010) ("[S]trict compliance with Rule 11(c)(2) may be excused where a party has placed its opponent on written notice of its intent to seek sanctions, invoking Rule 11 and describing the deficiencies in the nonmovant's claims, and where the opponent had at least 21 days thereafter during which the claims could have been withdrawn."), *aff'd sub nom. Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121 (2d Cir. 2011); *Kilkenny v. Greenberg Traurig, LLP*, No. 05 CIV. 6578 (NRB), 2006 WL 1096830, at *6 (S.D.N.Y. Apr. 26, 2006) (finding that pre-motion letter noticing intent to file Rule 11 motion and waiting twenty-one days to file such motion satisfied safe harbor requirement).

opposition due by September 12, 2024; Defendant's reply due by September 19, 2024.  No further briefing will be considered.  In the alternative, Defendant may inform the Court by August 22, 2024 if it wishes for the Court to deem its pre-motion letter its motion for Rule 11 sanctions. Should Defendant elect to do so, Plaintiff shall inform the Court by August 29, 2024 whether she intends to rest on her pre-motion letter in opposition or wishes to supplement her response. Counsel are reminded to comply with the Court's Individual Rules of Practice in Civil Cases in their submissions.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's renewed motion for judgment as a matter of law or, in the alternative, a new trial is DENIED; Plaintiff's motion for a new trial or, in the alternative, to alter or amend the judgment is DENIED; the parties' requests for oral argument in support of their motions and oppositions are DENIED[21]; Defendant's letter motion to strike Plaintiff's sur-reply and excess reply brief is DENIED; and Defendant's pre-motion letter requesting leave to file a Rule 11 motion for sanctions against Plaintiff is GRANTED.  The parties are ORDERED to comply with the deadlines for further submissions set forth in this Order.  The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 188, 189, 191, 195, 213, 222, 223, and 226.

**SO ORDERED.**

**Date:  August 15, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[21] *See, e.g.*, *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283 (VSB), 2016 WL 11944285, at *1 (S.D.N.Y. Sept. 30, 2016) (denying motions for oral argument where the court did "not believe that oral argument would be beneficial to [its] determination of either set of motions").