UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/28/2024
```

EMILY PENZO,

                    Plaintiff,

          -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                    Defendant.

1:19-cv-07478-MKV

**MEMORANDUM OPINION AND
ORDER GRANTING PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Emily Penzo sued her former employer, Defendant Consolidated Edison Company of New York, Inc., alleging that Defendant discriminated and retaliated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and that Defendant retaliated against her and interfered with her benefits in violation of the Family and Medical Leave Act ("FMLA").  Following a four-day trial in December 2023, a jury returned a verdict for Plaintiff on a single claim of retaliation in violation of the NYCHRL, and awarded Plaintiff compensatory damages in the form of back pay in the amount of $203,951.35.  [ECF No. 173 ("Special Verdict Form")].  The jury found for Defendant on Plaintiff's remaining seven claims.  *See* Special Verdict Form.[1]

---

[1] On August 15, 2024, the Court ruled on both parties' post-trial motions, denying Plaintiff's motion for a new trial or, in the alternative, to alter or amend the judgment, and Defendant's renewed motion for judgment as a matter of law or, in the alternative, a new trial.  [ECF No. 228].

Plaintiff now moves[2] for attorneys' fees and costs in the amount of $700,542.22, filing a memorandum of law and several declarations and exhibits in support.[3]  [ECF No. 197 ("Pl. Mem.")].  Defendant opposed.  [ECF No. 204 ("Def. Mem.")].  Plaintiff filed a reply brief in further support of her motion, along with several additional declarations.[4]  [ECF No. 217 ("Pl. Reply")].  The Court assumes familiarity with the factual background, procedural history, and trial transcript [ECF Nos. 179, 181, 183, 185 (together, "Tr.")] in this case.  For the reasons that follow, Plaintiff's motion for attorneys' fees and costs is GRANTED as modified herein.

## LEGAL STANDARD

Under the NYCHRL, the Court "in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs."  NYCHRL § 8-502(g).  A district court has broad discretion in determining reasonable attorneys' fees.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  "[T]he starting point for calculating a fee award is the lodestar method, which multiplies the number of hours the prevailing party's attorney expended on the case by the reasonable hourly rate charged for similar

---

[2] Plaintiff's original motion for attorneys' fees contained only a notice of motion and was not accompanied by a memorandum of law or any supporting affidavits or exhibits.  [ECF No. 187].  Defendant opposed the motion as procedurally defective.  [ECF No. 190].  Thereafter, Plaintiff filed the present motion and supporting papers, as well as a letter explaining her failure to comply with Local Civil Rule 7.1(a), which requires all motions to include a memorandum of law and any supporting affidavits and exhibits necessary for the Court's resolution of the motion. [ECF Nos. 197, 198].  Defendant again requested that the Court deny Plaintiff's motion as procedurally defective, or, in the alternative, permit Defendant to oppose the motion on the merits.  [ECF No. 202].  The Court accepted Plaintiff's re-filed motion and permitted Defendant to file an opposition and Plaintiff to file a reply thereto.  [ECF No. 203].

[3] In support of her motion, Plaintiff filed a Declaration of Yifat Schnur [ECF No. 197-2 ("Schnur Decl.")], accompanied by the invoices of Ms. Schnur's firm, YVLS Law ("YVLS") [ECF No. 197-3 ("YVLS Invoices")], and the invoices of another law firm, Schlam Stone & Dolan, LLP [ECF No. 197-4 ("SSD Invoices")], a Declaration of Laine Armstrong [ECF No. 197-5 ("Armstrong Decl.")], accompanied by the invoices of Ms. Armstrong's firm, Advocates for Justice, Chartered Attorneys ("AFJ") [ECF No. 197-6 ("AFJ Invoices")], and a Declaration of Emily Penzo [ECF No. 197-7], accompanied by a ledger of costs incurred by Plaintiff throughout this litigation [ECF No. 197-8 ("Penzo Costs")].

[4] In further support of her motion, Plaintiff filed a Supplemental Declaration of Laine Armstrong [ECF No. 216 ("Armstrong Suppl. Decl.")] and a Declaration of Jeffrey M. Eilender [ECF No. 217 ("Eilender Decl.")].

work by attorneys of like skill in the jurisdiction." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 366 (S.D.N.Y. 2015).

"[T]he lodestar may be adjusted in light of more subjective factors, such as the risk of the litigation, the complexity of the issues, and the skill of the attorneys." *Id.* (internal quotation marks omitted); *see Arbor Hill*, 522 F.3d at 190 (a district court should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate"); *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228. In addition, "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Castillo v. Time Warner Cable of New York City*, No. 09 CIV. 7644 PAC, 2013 WL 1759558, at *3 (S.D.N.Y. Apr. 24, 2013) ("The presumptively reasonable fee may be reduced to account for a plaintiff's limited success." (internal quotation marks omitted)).

A "prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). However, "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838

(2011).  Accordingly, a "district court is not obligated to undertake a line-by-line review of [a party's] extensive fee application."  *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014).  Instead, "[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application."  *McDonald*, 450 F.3d at 96 (internal quotation marks omitted).

## DISCUSSION

### I.    Fees Incurred by Schlam Stone & Dolan, LLP

Before turning to the reasonableness of Plaintiff's requested fee award, the Court addresses a threshold issue raised by Defendant.  Defendant argues that Plaintiff should not be awarded any fees for work performed by attorneys and staff at the firm of Schlam Stone & Dolan, LLP ("SSD").  Def. Mem. 6–8.  SSD appeared as Plaintiff's counsel in this action on May 26, 2022, nearly three years after the case was filed.  [ECF No. 84].  Less than eleven months later, on April 21, 2023, SSD withdrew from this action, citing a conflict of interest.  [ECF Nos. 100, 101].  Nonetheless, Plaintiff seeks $33,656.07 in legal fees and costs incurred by SSD, all of which—save fees associated with SSD's preparation of its request for withdrawal—post-date SSD's withdrawal.  Schnur Decl. ¶ 6; *see* SSD Invoices.  Plaintiff's lead counsel, Ms. Schnur, avers that she is of counsel to SSD[5] and "utilized the resources of SSD throughout this litigation" for its "paralegal and clerical services."  Schnur Decl. ¶ 6.  However, Plaintiff's submitted billing records for SSD indicate that the work SSD performed following its withdrawal was not limited to administrative and paralegal tasks, but included legal work such as research and drafting by associates and consultation with partners, including the partner who withdrew from this matter due to a conflict.  *See* Def. Mem. 7; SSD Invoices 2–3, 6–7, 11; Eilender Decl. ¶ 9.  Plaintiff states that following

---

[5] Ms. Schnur is not listed as Of Counsel on SSD's website.

SSD's withdrawal, "[a]fter further review, [SSD] determined that no conflict existed" and thereafter continued to work on this case.  Pl. Reply 2.  SSD did not re-file a notice of appearance following its withdrawal and the Court (and presumably Defendant) was unaware of SSD's further involvement in this case until the submission of the present motion for attorneys' fees.

There is no blanket rule against an award of attorneys' fees to a prevailing party's prior counsel.  *See I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*, No. 92 CIV. 0597 (PKL), 2003 WL 135797, at *3 (S.D.N.Y. Jan. 17, 2003) (awarding fees to prior counsel); *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, No. 16-CV-4762 (LTS) (JW), 2022 WL 2905035, at *2, *6 (S.D.N.Y. July 22, 2022) (awarding fees for prior counsel's paralegal work).  Nor is a party precluded from seeking fees for an attorney or firm with whom her primary counsel has an "of counsel" relationship, *see Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1435 (S.D.N.Y. 1994) (awarding fees for individual attorney with whom one of plaintiffs' law firms had an "of counsel" relationship), *aff'd*, 67 F.3d 1072 (2d Cir. 1995), or an attorney who did not file a notice of appearance in the case.  *See Teamsters Loc. 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds by Picani v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2019 WL 3960099, at *8 (S.D.N.Y. Aug. 22, 2019); *HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *4 (E.D.N.Y. Nov. 21, 2018) (collecting cases); *Bazignan v. Team Castle Hill Corp.*, No. 13 CIV. 8382 PAC, 2015 WL 1000034, at *5 (S.D.N.Y. Mar. 5, 2015) ("[I]t is unreasonable to assume that the only necessary work performed on this case was by those who appeared or performed filings in the case."); *Cruceta v. City of New York*, No. 10-CV-5059 FB JO, 2012 WL 2885113, at *2–*4 (E.D.N.Y. Feb. 7, 2012) (collecting cases), *report and recommendation adopted*, No. 10-CV-5059 FB JO, 2012 WL 2884985 (E.D.N.Y. July 13, 2012).  Finally, "there is no *per se* rule barring recovery of any attorneys' fees in the event of a conflict of interest," and "[a]lthough courts are

empowered to deny attorneys' fees in such situations, they are not compelled to do so—the exercise of such power is discretionary." *Chicago Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, No. 90 C 6247, 1992 WL 398398, at *5 (N.D. Ill. Dec. 21, 1992) (citing *Woods v. City Nat'l Bank & Tr. Co. of Chicago*, 312 U.S. 268 (1941) and *Crites, Inc. v. Prudential Ins. Co. of America*, 322 U.S. 408, 418 (1944)).

But those are not the issues here. The fees that Plaintiff seeks to recover for work performed by SSD were incurred *after* the firm requested to withdraw from this action following its discovery of a conflict of interest, of which it informed this Court and of which the Court took note in granting SSD's withdrawal motion. [*See* ECF No. 101]. SSD did not re-file a notice of appearance in this action when it apparently determined that such a conflict did not exist and that it would in fact work on this case. *See* Pl. Reply 2. Nevertheless, SSD continued to perform significant work in representing Plaintiff, all while the Court (and, perhaps, Defendant) operated on the assumption that SSD's relationship with Plaintiff had terminated and its work on her behalf had ceased. Given the nature of SSD's withdrawal, the Court finds that Plaintiff's nondisclosure of SSD's continued work on the case—if not unethical—is troubling, and weighs against an award of fees for SSD's work.

Moreover, even if the Court were not concerned by SSD's continued work on this case following its noticing a conflict of interest, the Court would not award attorneys' fees to SSD because Plaintiff has not demonstrated that SSD's work was necessary to her representation. "If an attorney is consulting on a case, the assistance provided must be actually necessary or essential to proper representation rather than merely comforting or helpful." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1252 (10th Cir. 1998); *see HVT*, 2018 WL 6079932, at *4 (noting that while a party's use of multiple attorneys is not inherently problematic, "[t]he moving party, however, must demonstrate the need for each attorney's expertise" to justify an

award of fees (citing *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325 (S.D.N.Y. 2003))).   Unlike the services of Ms. Armstrong, which Ms. Schnur sought to ease the burdens of preparing for trial as a solo practitioner, among other personal circumstances, *see* Schnur Decl. ¶ 14, Plaintiff has not shown that SSD's services were essential.   Ms. Schnur states that she used SSD for their "paralegal and clerical services."   Schnur Decl. ¶ 6.   Indeed, the paralegal who appeared at trial and for whom Plaintiff seeks fees is an employee of SSD.   But Plaintiff never disclosed this to the Court and has not explained why she could not obtain paralegal and administrative services through Ms. Schnur's own firm, through Ms. Armstrong's firm, or through a firm or agency unaffiliated with withdrawn and potentially conflicted counsel.   Although the Court will not "dictate the terms of how Plaintiff's counsel should practice," Pl. Reply. 2, Plaintiff has not shown the requisite necessity of SSD's services to warrant an award of its fees in this case.   Moreover, as noted, although Ms. Schnur states that she utilized SSD primarily for administrative support, SSD's invoices also reflect legal work.   Here, too, Plaintiff has not explained why her two counsel of record could not perform these services.   Indeed, it appears that much of SSD's legal work on this matter was of the "merely comforting or helpful" nature that is not compensable.   *See Case*, 157 F.3d at 1252.   For example, a partner at SSD reviewed and conferred with Ms. Schnur as to the special verdict sheet and jury instructions, a duplicative task that Plaintiff's two counsel of record performed on their own.   *See* SSD Invoices 6; AFJ Invoices 10; YVLS Invoices 13; *see also* Eilender Decl. ¶ 9.

Finally, Plaintiff has not made a sufficient showing of the qualifications of SSD's attorneys or staff members to justify their hourly rates.[6]   This, too, weighs against an award of SSD's fees,

---

[6] Plaintiff submitted a declaration of one partner at SSD.  *See* Eilender Decl.  However, Plaintiff seeks to recover fees for multiple SSD partners, associates, and paralegals who worked on this matter.  *See* SSD Invoices.  Plaintiff has made no showing at all of their skills, experience, qualifications, or reputations.

because "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 143 (S.D.N.Y. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see Dumann Realty, LLC v. Faust*, No. 09 CIV. 7651 VM KNF, 2011 WL 3665116, at *2 (S.D.N.Y. Aug. 15, 2011) ("The Court is unable to assess the reasonableness of [counsel's] hourly rate due to her failure to provide necessary information.").

Accordingly, the Court, "in exercising its considerable discretion" in determining an overall award of attorneys' fees to Plaintiff, will not award any fees for work performed by attorneys or professional staff at SSD. *See Arbor Hill*, 522 F.3d at 190.

## II.    Reasonable Hourly Rate

The Court next turns to the calculation of a reasonable attorneys' fee for Plaintiff's two counsel of record, Ms. Schnur and Ms. Armstrong, starting with their reasonable hourly rates.[7] "The reasonable hourly rate is the rate a paying client would be willing to pay. . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.*  A district court should "presume . . . that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* at 191.  Thus, courts "generally . . . use . . . the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (internal quotation marks omitted).  To do so requires "a case-specific

---

[7] The Court does not assign an hourly rate or otherwise award fees for Aileen Park, Plaintiff's paralegal, as she is—previously unbeknownst to the Court—an employee of SSD.  *See supra* Part I.

inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005).

Plaintiff requests hourly rates of $650 for lead counsel, Ms. Schnur, and $750 for co-counsel, Ms. Armstrong. Pl. Mem. 11. Defendant argues that these rates are excessive, and that the Court should utilize a rate of $400 per hour each for Ms. Schnur and Ms. Armstrong. Def. Mem. 8–11.

The Court agrees that the rates Plaintiff seeks for her counsel are excessive. "Courts in this district have approved hourly rates of $250 to $600 for civil rights attorneys with over ten years of experience," *Lewis v. American Sugar Ref., Inc.*, No. 14-CV-02302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019), and "reasonable rates for [such attorneys] appear to cluster in the $350–450 per hour range." *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) (internal quotation marks omitted); *see also Field v. Metro. Transp. Auth.*, No. 20-CV-928 (RA), 2021 WL 22817, at *2 (S.D.N.Y. Jan. 4, 2021) ("Courts within the Southern District of New York have awarded experienced civil rights attorneys rates in the range of $400–500 per hour for single plaintiff civil rights cases like this one." (internal quotation marks omitted)); *Rogers v. Subotic LLC*, No. 18-CV-1997 (JPO), 2019 WL 350259, at *2 (S.D.N.Y. Jan. 29, 2019) (in NYCHRL action, awarding $350 per hour for attorney with thirteen years' experience practicing in New York and seven years' abroad).

Ms. Schnur and Ms. Armstrong are experienced attorneys with expertise in the civil rights field and approximately twenty years' experience each, *see* Schnur Decl. ¶ 23; Armstrong Decl. ¶ 5, which supports assigning a customary rate for experienced attorneys with such qualifications. However, the Court does not find that the circumstances of this case call for or can justify an hourly

rate at the high end of the spectrum for civil rights cases. Although Ms. Schnur and Ms. Armstrong are well-qualified, experienced lawyers, rates as high as Plaintiff requests—"$550 per hour or more—have been reserved for extraordinary attorneys held in unusually high regard by the legal community." *HomeAway.com*, 523 F. Supp. 3d at 597 (internal quotation marks omitted). Respectfully, Plaintiff has not made a showing of Ms. Schnur's and Ms. Armstrong's professional reputations sufficient to support the proposed rates. *See id.* (awarding $650 hourly rate to attorney with over twenty-five years' experience as a partner at a several large, elite law firms, who clerked on the Supreme Court and litigated extensively in several relevant areas of law).

In addition, neither Ms. Schnur nor Ms. Armstrong consistently represented Plaintiff throughout this case, which also weighs against their requested rates. *See Lilly*, 934 F.3d at 228 (instructing district courts to consider, among the factors pertinent to assessing a reasonable hourly rate, "the nature and length of the professional relationship with the client"). Although Ms. Armstrong prepared the initial complaint in this case and represented Plaintiff through discovery, she withdrew approximately one year into the litigation due to irreconcilable differences and a breakdown in communication with Plaintiff. [ECF No. 51]. Ms. Armstrong appeared again for Plaintiff only on the eve of trial, at the request of Ms. Schnur. Armstrong Decl. ¶¶ 2–3; Schnur Decl. ¶¶ 4, 14–17. Ms. Schnur has represented Plaintiff since Ms. Armstrong's withdrawal, and she has performed substantial work including opposing Defendant's motion for summary judgment and acting as lead trial counsel, but she was not involved in the origination of this case or the discovery process. Schnur Decl. ¶¶ 4–5.

Moreover, although this case involved protracted litigation over the course of several years and culminated in a jury trial, the legal and factual issues it presented were not particularly novel or complex. *See Dancy v. McGinley*, 141 F. Supp. 3d 231, 238 (S.D.N.Y. 2015) ("[S]ome courts find that awards exceeding $400 per hour are only warranted in unusually difficult and complex

cases." (internal quotation marks omitted)). "Courts interpret the term 'novel and complex' as pertaining to cases involving areas of unsettled law or issues of first impression." *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 495 (S.D.N.Y. 2019); *see also Reiter v. Metro. Transp. Auth. of State of New York*, No. 01 Civ. 2762(GWG), 2007 WL 2775144, at *4 (S.D.N.Y. Sept. 25, 2007) ("no inference of complexity should be taken from the fact that the case was originally filed" many years prior). No such novelty or complexity was present in this case, which involved a single plaintiff raising straightforward claims for discrimination and retaliation in violation of federal, state, and local statutes, based on well-established legal theories and alleged in a complaint that spanned only twelve pages [*see* ECF No. 33]. *Compare, e.g.*, *Williams v. Metro-N. R.R. Co.*, No. 1:17-CV-03847 (JGK), 2018 WL 3370678, at *6, *8 (S.D.N.Y. June 28, 2018) (awarding hourly rate of $800 for lead counsel in case that "involved novel and evolving legal theories" regarding Title VII's applicability to transgender plaintiff), *report and recommendation adopted*, 2018 WL 3368713 (S.D.N.Y. July 18, 2018), *and HomeAway.com*, 523 F. Supp. 3d at 597–98 (awarding $650, $600, and $500 hourly rates to partners in case that required "unusually complex and sophisticated work"), *with Dancy*, 141 F. Supp. 3d at 238–39 (awarding civil rights attorney with thirty-six years' experience $450 hourly rate in single-plaintiff Section 1983 case presenting straightforward claims alleged in a seven-page complaint that did not require "the work of an experienced attorney"), *and Indep. Project*, 397 F. Supp. 3d at 495–96 (awarding $400 hourly rate in ADA case that did "not involve complex or novel legal issues").

In consideration of the prevailing market rates in this District, Ms. Schnur's and Ms. Armstrong's qualifications, expertise, experience, and their respective roles in this matter, and the demands of this case, among all other pertinent factors[8], the Court finds that an hourly rate of $450

---

[8] Plaintiff has not made a showing that her counsel were precluded from accepting other matters due to her representation, that Plaintiff or the circumstances of the case imposed particular time constraints on counsel, or that

is reasonable for both Ms. Schnur and Ms. Armstrong. *See, e.g.*, *Lewis*, 2019 WL 116420, at *2–*5 (approving hourly rate of $450 for two counsel in Title VII, NYSHRL, and NYCHRL case under similar circumstances).

### III.    Hours Reasonably Expended

In addition to the reasonableness of the hourly rate, a plaintiff seeking attorneys' fees "must also establish that the number of hours for which they seek compensation is reasonable." *Knox v. John Varvatos Enters. Inc.*, 520 F. Supp. 3d 331, 343 (S.D.N.Y. 2021) (internal quotation marks omitted) (citing *Arbor Hill*, 522 F.3d at 188), *aff'd sub nom. Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140 (2d Cir. Nov. 4, 2021).  In determining whether the number of hours counsel expended on a case was reasonable, "[t]he court evaluates contemporaneous records . . . in light of its own experience and knowledge of the demands of the action." *Lewis*, 2019 WL 116420, at *6 (citation omitted); *see Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).  "The court may apply an across the board reduction for vague [time] entries or for entries reflecting duplicative, inefficient, or unnecessary work." *Lewis*, 2019 WL 116420, at *6.  The Court may also apply a reduction for the practice of "block billing," or "the aggregation of multiple tasks into a single billing entry," which "mak[es] it difficult for the Court to isolate areas of excess." *Marchuk*, 104 F. Supp. 3d at 370 & n.3.

In total, Plaintiff seeks an award of attorneys' fees that compensates 978.7 hours of work by all attorneys and professional staff on this matter.[9]  In support of her motion, Plaintiff has submitted contemporaneous billing statements recording that Ms. Schur billed 580.4 hours and Ms. Armstrong billed 311.5 hours for their work.  *See* YVLS Invoices 18; AFJ Invoices 1.

---

this case was particularly "undesirable" or risky.  *See Lilly*, 934 F.3d at 228.  The Court therefore assigns considerably less weight to these factors.

[9] This figure is 891.9 hours after deducting the hours expended by attorneys and staff at SSD.  *See* SSD Invoices 1.

Defendant argues that the Court should reduce Plaintiff's requested hours by at least fifteen percent to account for "widespread block billing and vague time entries." Def. Mem. 18.

At the threshold, the Court notes that the aggregate number of hours expended by Plaintiff's counsel—although at the high end—is generally within the realm of reason for an employment discrimination case that has proceeded to a jury verdict. *See Knox*, 520 F. Supp. 3d at 346 (relying "heavily on case law in this Circuit determining reasonable hours in labor or employment discrimination suits that went to trial" and concluding that "in most instances the hours sought or awarded were under 1000 hours"); *see also, e.g.*, *Reiter*, 2007 WL 2775144, at *18 (awarding 1,129.71 hours for three attorneys in six-day employment discrimination trial); *Figueroa v. KK Sub II, LLC*, No. 15-CV-6526-FPG, 2019 WL 1109864, at *13 (W.D.N.Y. Mar. 11, 2019) (awarding 889.25 hours in Title VII sexual harassment case that culminated in five-day jury trial).

The Court also recognizes that the number of hours expended by Plaintiff's counsel was largely commensurate with the demands of this case. *See Clarke*, 960 F.2d at 1153. Some of Plaintiff's counsel's work in this action was needlessly amplified by Defendant, necessitating that Plaintiff's counsel spend hours, for example, opposing Defendant's baseless motion for summary judgment [*see* ECF No. 92], and five separate motions *in limine*, some of the arguments in which bordered on frivolity [*see* ECF No. 163]. *See* Schnur Decl. ¶¶ 11–12. At times, however, Plaintiff's counsel also unnecessarily duplicated work, such as by repeatedly filing "amended" documents, including in support of the present motion. [*See* ECF Nos. 195, 197, 215]. Ms. Schnur also spent a significant amount of time preparing Plaintiff's motion for a new trial, which was unsuccessful in its entirety. *See* YVLS Invoices 16–17.

Plaintiff's counsel's billing practices also favor a reduction in their hours billed. Ms. Schnur frequently engaged in block billing, aggregating many tasks into single entries accounting for several hours of her time—sometimes in excess of ten hours. *See* YVLS Invoices 2 (05/20/21),

4 (06/30/21), 6 (05/19/22), 7 (05/31/22), 8 (06/05/23), 10 (10/27/23), 11 (11/08/23), 12 (11/09/23, 11/12/23), 13 (11/26/23), 14 (12/05/23, 12/06/23, 12/07/23), 15 (12/08/23, 12/10/23, 12/11/23), 16 (12/12/23, 12/13/23, 12/14/23, 12/15/23), 17 (01/15/24, 01/17/24).  For example, on June 5, 2023, Ms. Schnur billed sixteen hours for a task described only as "June 6, 7, and 8 - review deposition transcripts notate and draft deposition digests."  YVLS Invoices 8 (06/05/23).  Indeed, as Defendant points out, it appears that Ms. Schnur aggregated three days of work into a single, undifferentiated time entry.  *See* Def. Mem. 15.  And while Ms. Schnur's practice of block billing occurred most significantly, and perhaps understandably, during trial, it also occurred before trial and continued through her work on the parties' post-trial motions.  *See, e.g.*, YVLS Invoices 17 (01/15/24) (billing seven hours towards at least fourteen different tasks, with no allocation of time between them), (01/17/24) (similar, for thirteen hours).  Ms. Schnur's use of block billing in this case warrants a reduction in the total number of hours billed.[10]  *See Raja v. Burns*, 43 F.4th 80, 89 (2d Cir. 2022) (block billing is "'most problematic where large amounts of time (*e.g.*, five hours or more) are block billed' and such lack of specificity 'meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent'" (quoting *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015))).

In addition, time entries by both of Plaintiff's counsel are vague.  For example, Ms. Schnur billed for correspondence without identifying the nature or subject matter of the messages or calls.  *See, e.g.*, YVLS Invoices 3 (05/31/21) ("Review several emails from Emily."), (06/01/21) ("Phone Call With Emily"), 9 (08/21/23) ("Conference Call With Ephraim from Seyfarth"), 14 (12/01/23) ("calls with Emily lane and correspondence with Aileen"), 16 (12/21/23) ("Phone Call With Emily and Betty").  Similarly, Ms. Armstrong's records contain several instances of billing for research

---

[10] Ms. Armstrong did not engage in block billing.  *See* AFJ Invoices.

or correspondence without identifying the subject of the task. *See, e.g.*, AFJ Invoices 9 (10/13/2020) ("Phone calls with client"), 10/19/20 ("call client (.2), legal research (.5), email client (.1)"). These vague billing practices, although not pervasive, favor an hours reduction. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016) (tasks that are "identified in mere generalities," including for client and team communications, "are precisely the sort that courts have deemed impermissible in the context of fee awards").[11]

Accordingly, the Court applies a modest ten percent reduction to Plaintiff's counsel's total billed hours to account for duplicative work, block billing, and vague time entries. *See Abeyta v. City of New York*, No. 12 CIV. 5623 KBF, 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) ("Accordingly, given the vague nature of certain entries . . . , the Court hereby decreases the total number of hours for which compensation is sought by 10%."), *aff'd*, 588 F. App'x 24 (2d Cir. 2014); *Raja*, 43 F.4th at 90 (citing *Nnebe v. Daus*, No. 06-cv-4991, 2022 WL 612967, at *7–*8 (S.D.N.Y. Mar. 1, 2022) and approving of its application of a fifteen percent across-the-board hours reduction to account for, *inter alia*, block-billed and vague time entries); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (finding no abuse of discretion in twenty-percent reduction "for vagueness, inconsistencies, and other deficiencies in the billing records"); *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (district court did not abuse discretion "in basing its 30% reduction, in part, on the prevalence of block-billed time entries"); *see also, e.g.*, *Wise v. Kelly*, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (reducing hours by twenty-five percent because

---

[11] Defendant also argues that certain of Ms. Schnur's time entries record administrative tasks that are not compensable at an attorney's billing rate. *See* Def. Mem. 17 (citing *Reiter*, 2007 WL 2775144, at *15 (noting that tasks "such as photocopying of exhibits" are not recoverable by attorneys)). The Court agrees with Defendant's assessment. *See, e.g.*, YVLS Invoices 10 (09/19/23) (billing 1.22 hours for filing of oppositions to motions *in limine*). However, because the Court does not award any fees for paralegal work in this matter, *see* supra n.7, the Court afforded these infrequent instances of billing for administrative tasks little weight in its analysis.

of vague time entries); *Kalloo v. Unlimited Mechanical Co. of NY*, 977 F. Supp. 2d 209, 213 (E.D.N.Y. 2013) (applying five-percent reduction for "modest number of" redundant and vague time entries); *Price v. Cushman & Wakefield, Inc.*, No. 08 Civ. 8900 (SC), 2012 WL 13070114, at *8 (S.D.N.Y. Jan. 4, 2012) (applying twenty-percent reduction in hours for, among other problematic practices, block billing and vague time entries).

## IV.    Reduction for Limited Success

Finally, because "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees . . . 'is the degree of success obtained' by the plaintiff," *Barfield*, 537 F.3d at 152 (quoting *Farrar*, 506 U.S. at 114), the Court must consider the degree of Plaintiff's success in further evaluating reasonable attorneys' fees in this case. *See Murray v. UBS Sec., LLC*, No. 14 CIV. 927 (KPF), 2020 WL 7384722, at *15 (S.D.N.Y. Dec. 16, 2020) (noting that a plaintiff's degree of success may be factored into the reasonable hourly rate *or* the hours reasonably expended, but that "[m]ore often than not, . . . courts reflect that factor when or after determining the reasonable number of hours expended" (citing *Smith ex rel. 50 E. 69th St. Corp. v. Smith*, No. 17 Civ. 6648 (PAE), 2020 WL 1934984, at *2–*3 (S.D.N.Y. Apr. 22, 2020) (collecting cases))). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Holick v. Cellular Sales of New York, LLC*, 48 F.4th 101, 106 (2d Cir. 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)). "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.

Plaintiff argues that the Court should not reduce her attorneys' fees due to her partial success because "attorney's fees may be awarded for unsuccessful claims as well as successful ones where they are inextricably intertwined and involve a common core of facts or are based on

related legal theories." Pl. Mem. 16 (quoting *Holick*, 48 F.4th at 106 (cleaned up) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999))). Plaintiff argues that "all of [her] claims stem from the same nucleus of facts: [Plaintiff's] treatment by [Defendant] due to her disability, and the consequences arising out of the same." Pl. Mem. 16. Further, Plaintiff notes that the Second Circuit has remarked, relying on Supreme Court precedent, "that most civil rights claims will involve a common core of facts, or be grounded in related legal theories, or both." Pl. Mem. 16 (quoting *Holick*, 48 F.4th at 108).

The Court finds some merit in Plaintiff's position. Although Defendant argues that Plaintiff's disability discrimination claims and retaliation claims concerned different underlying conduct, *see* Def. Mem. 18–20, "when a plaintiff fails to prove one of two overlapping claims—*e.g.* a discriminatory discharge—but prevails on the other—*e.g.* retaliation for complaining of discrimination," such claims are typically considered intertwined and "the plaintiff may recover fees for all the legal work" expended on both claims. *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90–91 (2d Cir. 2004); *see Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1259–60 (2d Cir. 1987); *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 WL 1080780, at *12 (S.D.N.Y. Mar. 6, 2020) (finding successful NYCHRL retaliation claim to be intertwined with unsuccessful NYCHRL discrimination claim, including "because there is significant overlap between the elements necessary to prove discrimination and retaliation under the NYCHRL," and thus overlap in proof).

Here, Plaintiff alleged, under federal, state, and local statutes, that Defendant retaliated against her because she filed an EEOC complaint alleging that Defendant had discriminated against her because of her disability. Plaintiff's discrimination and retaliation claims were "inextricably intertwined" insofar as they concerned Defendant's alleged discrimination and the

consequences flowing from Plaintiff's complaints about that same discrimination.  *See Wilson*, 361 F.3d at 90–91; *Ravina*, 2020 WL 1080780, at *12.

Moreover, although Plaintiff prevailed on only one of her three retaliation claims, the three claims "involve[d] a common core of facts" and were "based on [the same] legal theor[y]"—that Defendant retaliated against Plaintiff for filing an EEOC charge of disability discrimination. *Holick*, 48 F.4th at 106 (quoting *Hensley*, 461 U.S. at 434–35).  Indeed, as the Court instructed the jury at trial, the only practical difference between Plaintiff's retaliation claim under the NYCHRL, on the one hand, and her retaliation claims under the ADA and the NYSHRL, on the other, was two elements of the legal standard applicable to the NYCHRL claim:  First, the NYCHRL requires only conduct that is "reasonably likely to deter a person from engaging in" protected activity, not a materially adverse change in the terms and conditions of the plaintiff's employment, and second, the NYCHRL imposes a more lenient "motivating factor" causation standard, rather than requiring but-for causation.  *Mihalik v. Credit Agricole Cheuvreux N. America, Inc.*, 715 F.3d 102, 110 n.8, 112, 116 (2d Cir. 2013); *see Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877 (LAP), 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021) (noting the "two important exceptions" in the NYCHRL's retaliation standard as compared to the ADA and the NYSHRL, and explaining these differences); Tr. 775:21–777:10, 777:22–778:1.  Otherwise, the three retaliation claims—including the evidence that could be adduced in support of them, and in turn the work that counsel had to expend on them—were substantively the same.

However, Plaintiff's two unsuccessful FMLA claims were not related to her intertwined discrimination and retaliation claims.[12]  Plaintiff's FMLA claims were limited to her allegations that Defendant retaliated against her and interfered with her FMLA benefits following her taking

---

[12] The jury did not find for Plaintiff on either of her FMLA claims.  *See* Special Verdict Form.

FMLA leave after a 2019 car accident. *See* Tr. 385:9–15 (Plaintiff's counsel stating in Rule 50 argument that the retaliation Plaintiff faced under the FMLA was "separate and apart from the acts of retaliation she suffered when [she] reported the discrimination under the EEOC"). The Court instructed the jury—without either party's objection—that Plaintiff's FMLA claims were so limited. *See* Tr. 677:11–17, 734:2–735:6, 778:19–23, 781:12–16. Thus, Plaintiff's FMLA claims—centered on conduct that took place nearly a year after Plaintiff's filing of her EEOC charge for disability discrimination—involved a distinct nucleus of facts from her retaliation and discrimination claims and is not intertwined with those claims. *See Marchuk*, 104 F. Supp. 3d at 369; *Ravina*, 2020 WL 1080780, at *12; *Casmento v. Volmar Constr., Inc.*, No. 20-CV-944 (LJL), 2022 WL 17666390, at *7 (S.D.N.Y. Dec. 14, 2022). The amount of time counsel expended in pursuit of Plaintiff's unsuccessful FMLA claims, in discovery and through trial, is severable from counsel's effort toward Plaintiff's other claims. *See Dancy*, 141 F. Supp. 3d at 240–41.

Moreover, despite the relatedness of some of Plaintiff's claims, the Second "[C]ircuit has . . . clearly adopted the view . . . that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's partial or limited success is not restricted . . . to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." *Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) (internal quotation marks omitted); *accord Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) ("The full lodestar may constitute an excessive fee award where the plaintiff has achieved only partial or limited success. . . . This will be true even where the plaintiff's claims are interrelated, nonfrivolous, and raised in good faith." (cleaned up) (quoting *Hensley*, 461 U.S. at 436)). Thus, even "[w]here a plaintiff[']s lawsuit was based on a common nucleus of facts, the Second Circuit has 'affirmed district court reductions of a lodestar fee by reason of the plaintiff[']s limited degree of success.'" *Dancy*, 141 F. Supp. 3d at 239 (quoting *Kassim*, 415 F.3d at 255). "Courts look to

both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint." *Holick*, 48 F.4th at 106 (cleaned up) (quoting *Barfield*, 537 F.3d at 152).

Under these legal standards, even considering that some of Plaintiff's claims were factually and legally intertwined, Plaintiff's limited success counsels in favor of a significant reduction in her requested attorneys' fees. Plaintiff prevailed on a single of the eight claims that were presented to the jury. The jury awarded Plaintiff $203,951.35 in compensatory damages in the form of back pay—a small fraction of the amount to which Plaintiff alleged she was entitled and that her counsel encouraged the jury to award. *See* Tr. 241:13–18 (Plaintiff's testimony estimating her back pay damages at $1.2 million), 697:3–698:10 (counsel, in summation, urging the jury to award Plaintiff $1.2 million in back pay, $9 million in front pay, and $6 million in punitive damages, in addition to an unspecified sum for emotional distress). Plaintiff's success is thus extremely limited in comparison to what she sought in her complaint and at trial, warranting a sizable percentage reduction to the requested fee, which is over three times what counsel recovered for Plaintiff. *See Holick*, 48 F.4th at 106–10 (affirming forty-percent reduction where plaintiffs "received just a fraction of the damages sought," despite intertwined nature of successful and unsuccessful claims); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 245 (2d Cir. 2019) (affirming fifty-percent reduction in consideration of "the success of the litigation as a whole," where claims were interrelated but plaintiff achieved only injunctive relief and no damages); *Ravina*, 2020 WL 1080780, at *10–*13 (applying thirty-five percent reduction where plaintiff prevailed on only one of twenty-two counts in complaint, and successful claim was intertwined with some, but not all, unsuccessful claims); *Murray*, 2020 WL 7384722, at *27 (reducing one counsel's fees by thirty percent, and the other by fifteen percent, in case where plaintiff sought damages "totaling nearly $14 million," including twenty years of front pay, but

"the jury awarded him approximately thirteen months of back pay, $653,600," and noting that "the Court cannot blind itself to the enormous disparities between and among what was sought by Plaintiff, what was obtained by Plaintiff, and what is now being sought by his counsel"); *Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*, No. 18-CV-2318 (LGS) (BCM), 2024 WL 424870, at *10 (S.D.N.Y. Jan. 31, 2024) (recommending thirty-percent reduction where, although some unsuccessful claims were factually and legally distinct, "all of plaintiff's claims were to some degree 'mutually supporting'"), *report and recommendation adopted sub nom. Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co.*, No. 18 CIV. 2318 (LGS), 2024 WL 870813 (S.D.N.Y. Feb. 29, 2024).

Accordingly, the Court applies an additional thirty-percent reduction in counsel's hours expended to account for Plaintiff's limited success, including the unrelated nature of some of her unsuccessful claims and the minimal monetary award that Plaintiff achieved in relation to the overall damages she sought.

*    *    *

The Court summarizes the application of its reductions to Plaintiff's counsel's hourly rates and hours expended as follows:

| Counsel Name | Requested Rate | Reasonable Rate | Requested Hours | Reasonable Hours (40%) | Fee Awarded |
|---|---|---|---|---|---|
| Yifat Schnur | $650.00 | $450.00 | 580.4 | 348.24 | $156,708.00 |
| Laine Armstrong | $750.00 | $450.00 | 311.5 | 186.9 | $84,105.00 |
| **Total:** | | | | | **$240,813.00** |

Accordingly, Plaintiff is awarded $240,813.00 in attorneys' fees.

V.    **Costs**

Finally, Plaintiff seeks an award of $76,223.05[13] in costs and expenses incurred by herself and her counsel.  *See* YVLS Invoices 18; AFJ Invoices 1; Penzo Costs 3.  The NYCHRL permits an award of reasonable costs to a prevailing plaintiff.  NYCHRL § 8-502(g).  Further, in this Circuit, "[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)); *accord Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  Costs such as "in-house duplication costs, telephone charges, meals, overtime, local transportation, postage, electronic legal research, and messenger service" are "[a]ll of . . . 'the sort of expenses that may ordinarily be recovered' as part of a fee award, and are not treated as 'overhead expenses.'"  *Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 605 (2d Cir. 2012) (quoting *LeBlanc-Sternberg*, 143 F.3d at 763).

Plaintiff's requested costs must be reduced for several reasons.  First, Plaintiff requests reimbursement as "costs" of several expenses that appear to be for legal services.  *See* Penzo Costs 1.  Plaintiff requests over $20,000.00 for services rendered by four different attorneys other than Ms. Schnur, Ms. Armstrong, or SSD, including $1,000.00 for a "[d]emand [l]etter," $18,980.00 for a "[c]ontingency [s]ettlement [a]greement," and $5,000.00 for a "[t]olling [a]greement."  Penzo Costs 1.  None of these attorneys have applied to this Court for their fees, and Plaintiff provides no documentation of these apparent legal fees, such as the attorneys' names, hourly rates, how many hours they worked, what services they rendered, or when the services were performed.  "[A] federal court in this Circuit cannot award fees without contemporaneous documentation of the

---

[13] Excluded from this figure are the costs incurred by SSD, which were minimal.  *See* SSD Invoices 9, 11, 13.

work performed," therefore Plaintiff's request for reimbursement of these legal services, inappropriately designated as "costs," must be rejected. *Close-Up Int'l, Inc. v. Berov*, No. CIVA 02CV-2363 DGT, 2007 WL 4053682, at *4 (E.D.N.Y. Nov. 13, 2007); *see McDonald*, 450 F.3d at 96 (a fee application "must be supported by contemporaneous time records, affidavits, and other materials"); *see also Ravina*, 2020 WL 1080780, at *16 (noting that the court could not assess the reasonableness of prior counsel's rates or hours without support and denying reimbursement). Moreover, several of Plaintiff's "costs" associated with prior counsel pre-date the filing of Plaintiff's complaint, "including failed attempts at settlement, and . . . prior counsel therefore did not contribute meaningfully to [Plaintiff's] success on the merits of her retaliation claim." *Ravina*, 2020 WL 1080780, at *16.

Plaintiff also requests reimbursement of $20,000.00 that she sent by wire transfer to Ms. Schnur, which appears to be a retainer for Ms. Schnur's legal services, as it was deducted from YVLS's invoices. *See* Penzo Costs 1; YVLS Invoices 18. However, Plaintiff's appropriate, reasonable recoupment of attorneys' fees for Ms. Schnur's legal services is incorporated into the Court's lodestar calculation explained above, and thus cannot be reimbursed as part of Plaintiff's costs. Accordingly, Plaintiff's requested costs must be reduced by $47,400.00 for inappropriately designated costs that in fact represent legal services.

Second, the Court declines to award costs for Plaintiff's counsel's hotel accommodations during trial. Both counsel's offices are located in Manhattan, a short distance from the courthouse.[14] *See* Schnur Decl. ¶ 1; Armstrong Decl. ¶ 1; Armstrong Suppl. Decl. ¶ 1. The Second Circuit has noted that "Defendants should not be burdened with the costs of funding out-of-district

---

[14] It is unclear whether Plaintiff's request includes reimbursement of her own hotel accommodations. However, Plaintiff resides in the Bronx, which is located in this District and is within commuting distance of the courthouse.

counsel unless the case requires specialized expertise beyond the competence of local counsel." *Pasini v. Godiva Chocolatier, Inc.*, 764 F. App'x 94, 96 (2d Cir. 2019). The Second Circuit's "reasoning applies with equal—if not greater—force to the travel and lodging costs of counsel who live *within* commuting distance of the district," and Plaintiff "cites no cases in which courts have awarded hotel fees to counsel at a law firm that is based in the very city where trial took place."[15] *Ravina*, 2020 WL 1080780, at *15; *see King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 174 (E.D.N.Y. 2004) (when "trial was held in New York City, where [fee applicant's] attorneys work, . . . there was no reason to stay in a hotel"). The Court will not reimburse Plaintiff's requested hotel expenses. However, the Court will reimburse local travel and parking costs, as well as meals during trial. *See King*, 325 F. Supp. 2d at 174 (noting that parking and local transportation may be reasonable expenses for counsel); *Westport*, 483 F. App'x at 605 (counsel's working meals are generally recoverable). Accordingly, the Court deducts $4,697.23 in hotel expenses from Plaintiff's requested costs.[16]

However, the Court will not engage in a further line-by-line review of Plaintiff's requested costs, as Defendant urges. Def. Mem. 23–24; *see Marion S. Mishkin L. Off.*, 767 F.3d at 150. Although Plaintiff's application for costs is not a model of clarity and is not supported by detailed documentation, her remaining requested costs are not exorbitant and represent "the sort of expenses that may ordinarily be recovered as part of a fee award," such as printing, copying, legal research, and filing costs. *Westport*, 483 F. App'x at 605 (internal quotation marks omitted); *see*

---

[15] In Plaintiff's cited authority, *see* Pl. Reply 11, the court awarded travel and hotel expenses for only one of two counsel whose offices were not located in, but "distant from Manhattan," and strongly questioned the propriety of plaintiff's retention of counsel who practiced in White Plains and Melville, Long Island "when equally experienced employment discrimination lawyers are available in New York City." *Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F. Supp. 301, 305 (S.D.N.Y. 1998) (Sotomayor, J.).

[16] Defendant asserts that Plaintiff's lodging costs total $9,394.46. Def. Mem. 24. The Court does not find support for this figure in Plaintiff's application. *See* Penzo Costs.

*Murray*, 2020 WL 7384722, at *29 (awarding cost of legal research and copying even though plaintiff did "not identify the precise topics as to which legal research was sought or what materials were photocopied").

Finally, "[t]he same doctrine that requires a reduction in fees due to lack of success applies equally to costs." *Ravina*, 2020 WL 1080780, at *16 (quoting *Salustio v. 106 Columbia Deli Corp.*, No. 15-CV-6857 (GWG), 2017 WL 5714089, at *3 (S.D.N.Y. Nov. 27, 2017)). Therefore, Plaintiff's cost award, after the deduction of the expenses described above, shall be reduced by thirty percent for the same reason the Court reduced Plaintiff's fee award. *See id.*

\*          \*          \*

The Court summarizes the application of its reductions to Plaintiff's costs as follows:

| Description | Amount |
|---|---|
| Total Requested Costs | $76,223.05 |
| Legal Fees | ($47,400.00) |
| Hotel Expenses | ($4,697.23) |
| Limited Success (30%) | ($7,237.75) |
| **Total:** | $16,888.07 |

Accordingly, Plaintiff is awarded $16,888.07 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees and costs is GRANTED subject to the modifications discussed above. Plaintiff is awarded attorneys' fees in the amount of $240,813.00 and costs in the amount of $16,888.07. The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 187 and 197.

**SO ORDERED.**

**Date:  August 28, 2024**
**        New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**